IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | | |
|---|---|---|
| JON BLONDELL, PAUL HARRINGTON, TIMOTHY JOHNSON, STEPHANIE LOWE, F/K/A STEPHANIE MARIE, CHASTITY MARIE, AND CLAYTON PRITCHARD, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS, | § § § § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 1:17-cv-00372 RRM-RML |
| v. | § § | |
| BRUCE BOUTON, DUNCAN CRABTREE-IRELAND, AUGUSTINO GAGLIARDI, RAYMOND M. HAIR, JR., JON JOYCE, AND STEFANIE TAUB, | § § § § § § § | |
| Defendants. | § § | |

**SECOND JOINT STATUS REPORT**

Pursuant to Magistrate Judge Levy's Docket Entry of October 27, 2017, the Parties file this Second Joint Status Report addressing the status of scheduling, pleadings, and discovery, and also including requests for relief. The requests for relief involve three questions that require answers from the Court: (1) whether and when the Court will hold a pre-motion conference on Defendants' proposed motions to dismiss, (2) whether depositions can begin after February 28, 2018, Defendants' target date to conclude document production, regardless of whether a pre-motion conference has taken place by that date, and (3) the cutoff date for searching and producing relevant non-email documents.

## SCHEDULING

In his May 23, 2017 Docket Order, Magistrate Judge Levy ruled that the Parties could exchange interrogatories and document requests, but could not notice depositions at that time. The Order also required that the Parties file a proposed scheduling order by June 2, 2017, and a status report on September 22, 2017. On June 2, 2017, the Parties filed their Report of Parties' Scheduling Conference (Dkt. 29). On July 27, 2017, Magistrate Judge Levy entered a Docket Order stating that depositions should not be commenced before the completion of document requests and interrogatories "and after Judge Mauskopf has held a pre-motion conference on defendants' proposed motion to dismiss."

In that Order, Magistrate Judge Levy also ordered the Parties to file a copy of the final proposed scheduling order with the Court. The Parties did so on August 1, 2017. Dkt. 34. For items 7-17 (which would take the case through everything required for the Court to rule upon class certification), the [Proposed] Agreed Scheduling Order did not provide dates certain by which those items must be accomplished, but rather stated the deadlines in terms of the number of days after depositions commence. Dkt. 34. This was necessary because: (1) Magistrate Judge Levy had ordered that depositions could not begin until after Judge Mauskopf had held a pre-motion conference on Defendants' proposed motion to dismiss, and (2) Judge Mauskopf had not yet held a pre-motion conference, such that the Parties do not know when depositions can commence.

Magistrate Judge Levy entered the Parties [Proposed] Agreed Scheduling Order on October 30, 2017, via a docket order. So, even after entry of the Scheduling Order, because the parties do not know the date depositions will start, they still do not know dates certain upon which the deadlines in the Scheduling Order will fall.

As of the date of this Status Report, the Court has not held a pre-motion conference on Defendants' proposed motions to dismiss.

# PLEADINGS, INCLUDING DEFENDANTS' PENDING REQUESTS FOR PRE-MOTION CONFERENCES

1. 1/23/17: Plaintiffs' Original Complaint (Class Action) filed. Dkt. 1.

2. 3/27/17: Defendants filed a letter pursuant to the Court's Individual Rule III(A)(2) requesting a pre-motion conference on a proposed Rule 12(b)(6) motion to dismiss the Original Complaint. Dkt. 16.

3. 4/18/17: Judge Mauskopf denied Defendants' request for a pre-motion conference with leave to renew it after the Parties held an initial conference with Magistrate Judge Levy. Docket order of 4/18/17.

4. 4/24/17: Plaintiffs' First Amended Complaint (Class Action) ("FAC") filed. Dkt. 23.

5. 4/28/17: Initial Conference Hearing conducted telephonically by Magistrate Judge Levy.

6. 5/2/17: Defendants filed a letter requesting a pre-motion conference on a Rule 12(b)(6) motion to dismiss the FAC. Dkt. 24.

7. 5/8/17: Plaintiffs filed a letter opposing the Court holding the requested pre-motion conference. Dkt. 25.

8. 5/9/17: Judge Mauskopf ordered the Parties by 5/23/17 to each file a letter with the Court setting forth in greater detail the legal bases for their positions on the proposed motion to dismiss, and stated that "[u]pon receipt of those filings, the Court will further advise the Parties as to whether a pre-motion conference is required." The order further provided that "Defendants' time to Answer is hereby extended until 21 days after the Court's decision on the proposed motion or until further order of the Court." Dkt. Order of 5/9/17.

9. 5/23/17: The Parties filed the required letters. Dkt. 27 & 28.

10. 8/2/17: Plaintiffs filed a letter informing Judge Mauskopf that rather than opposing the Court conducting a pre-motion conference on Defendants' proposed Rule 12(b)(6) motion

to dismiss, they now agreed that the Court should promptly hold such a conference. Dkt. 36. Plaintiffs made it clear, however, that they continued to contend that any 12(b)(6) motion to dismiss would be without merit. *Id*.

11. 8/18/17: Defendants filed a letter requesting Judge Mauskopf to hold a pre-motion conference on a proposed motion to dismiss the FAC pursuant to Rule 12(b)(1) or to issue an order allowing Defendants to file a motion to dismiss. Dkt. 38.

12. 8/23/17: Plaintiffs filed a letter in response stating that while Plaintiffs believe any such Rule 12(b)(1) motion would be without merit, they agreed that the Court should promptly hold a pre-motion conference on such proposed motion. Dkt. 39.

13. The Court has not ruled on Defendants' request for a pre-motion conference or for an order allowing Defendants to file a motion to dismiss.

## **DISCOVERY**

Pursuant to Magistrate Judge Levy's Order, the Parties have proceeded with written discovery.

1. On 8/7/17, the Parties exchanged initial disclosures. Plaintiffs served Supplemental Initial Disclosures on 8/16/17.

2. Plaintiffs served their first set of interrogatories and their first requests for production on Defendants on 6/30/17, and Defendants served written objections and responses thereto on 7/31/17. The Parties have conferred multiple times via telephone and in writing regarding Plaintiffs' objections to Defendants' responses, and those objections have been resolved (except for the end date for searching and producing relevant non-email documents, which is discussed further below), pending Plaintiffs' review of Defendants' full document production and privilege logs, per the Parties' agreement.

3. Plaintiffs served their second set of interrogatories and second requests for production on Defendants on 8/10/17, and Defendants served objections and responses thereto on 9/11/17. The Parties have conferred multiple times via telephone and in writing regarding Plaintiffs' objections to Defendants' responses, and those objections have been resolved (except for the end date for searching and producing relevant non-email documents), pending Plaintiffs' review of Defendants' full document production and privilege logs, per the Parties' agreement.

4. Plaintiffs served their third requests for production on Defendants on 8/18/17, and Defendants served objections and responses thereto on 9/18/17. The Parties have conferred multiple times via telephone and in writing regarding Plaintiffs' objections to Defendants' responses, and those objections have been resolved (except for the end date for searching and producing relevant non-email documents), pending Plaintiffs' review of Defendants' full document production and privilege logs, per the Parties' agreement.

5. Plaintiffs served their third set of interrogatories and their fourth request for production on Defendants on 9/5/17, and Defendants served objections and responses thereto on 10/5/17. The Parties have conferred multiple times via telephone and in writing regarding Plaintiffs' objections to Defendants' responses, and those objections have been resolved (except for the end date for searching and producing relevant non-email documents), pending Plaintiffs' review of Defendants' full document production and privilege logs, per the Parties' agreement.

6. Defendants served Defendants' Supplemental Responses to Plaintiffs' First Set Interrogatory Nos. 1, 3, 4, 5, 6, 7, 10, 11 and 12 on 10/20/17.

7. In all, Plaintiffs have served a total of nineteen interrogatories and 134 requests for production.

8. Defendants began a rolling production of documents by providing two sets of documents consisting of 176 documents totaling approximately 883 pages. On 10/31/17, Plaintiff notified Defendants of what Plaintiffs believe were deficiencies in Defendants' first two document productions. The Parties have conferred multiple times via telephone and in writing regarding those deficiencies, and those deficiencies have been resolved (except for the end date for searching relevant non-email documents), pending Plaintiffs' review of Defendants' full document production and privilege logs, per the Parties' agreement.

9. In an additional effort to avoid burdening the Court with discovery motions, the Parties invested significant time in negotiating a set of search terms and custodians for the bulk of Defendants' review of emails. The Parties finalized their agreement as to these search terms and custodians on November 8, 2017. Defendants have collected over 60 gigabytes of data, and the search terms yielded over 41,000 potentially responsive emails, including attachments. Defendants are now in the process of reviewing those emails and attachments for privilege and responsiveness. Defendants contend that they cannot estimate precisely how long it will take to complete that review, but promise to produce emails and attachments on a rolling basis and hope to complete their production of documents by February 28, 2018. That date is acceptable to Plaintiffs, but they reserve the right to seek relief from the Court if that goal is not met.

10. Defendants served their first set of interrogatories and first requests for production on Plaintiffs on 7/17/17. Plaintiffs served their written objections and responses thereto and privilege logs on 8/16/17, as well as supplemental and amended interrogatory responses on

8/23/17. Plaintiffs produced two sets of documents consisting of 109 documents totaling approximately 1722 pages, and they believe they have provided all responsive non-privileged documents.

11. The Parties submitted and Magistrate Judge Levy entered a Stipulated Order Governing Confidentiality of Discovery on 8/3/17. Dkt. 35 & Docket Order dated 8/3/17.

12. The Parties submitted and Magistrate Judge Levy entered a Stipulated Order Governing Discovery of Electronically Stored Information. Dkt. 37 & Docket Order dated 08/29/17.

**RELIEF REQUESTED**

1. Pre-Motion Conference on Defendants' Proposed Motions to Dismiss and Defendants' Answers to Plaintiffs' First Amended Complaint

Defendants' position. Defendants request either that the Court hold a pre-motion conference at its very first opportunity and grant them the right to file their proposed Rule 12(b)(1) and 12(b)(6) motions to dismiss or, in the alternative, that the Court simply issue an order allowing Defendants to file their motions to dismiss without holding a pre-motion conference. Defendants are anxious for an opportunity to file their motions to dismiss for failure to state a claim and for lack of subject matter jurisdiction. Defendants first requested a pre-motion conference concerning Defendants' desire to file a motion to dismiss on March 27, 2017. As set forth above, the Parties are actively engaged in written discovery (document requests and interrogatories). In Defendants' view, the need to file a motion to dismiss is particularly acute because discovery is imposing substantial burdens on Defendants, who are the unpaid Trustees of a non-profit organization. Such costs would of course be avoided if the Court were to grant Defendants' motion to dismiss.

Plaintiffs' position. Plaintiffs agree that the Court should hold a pre-motion conference on Defendants' proposed motions to dismiss at its very first opportunity. However, Plaintiffs believe that the letter briefing provided to the Court by the parties demonstrates that Defendants' motions

would have no merit.  Accordingly, at such conference, Plaintiffs request the Court to inform Defendants that it agrees with Plaintiffs that it would be a waste of time and effort for Defendants to file such motions.  Further, Plaintiffs request the Court to order Defendants to file an answer to the FAC within twenty (20) days of the pre-motion conference or by January 15, 2018, whichever comes first.

> 2. Whether Depositions Can Begin After February 28, 2018, Defendants' Target Date to Complete Document Production, Regardless of Whether A Pre-Motion Conference Has Taken Place By that Date

As set forth above, the 7/27/17 Docket Order stated that depositions should not be commenced before the completion of document requests and interrogatories "and after Judge Mauskopf has held a pre-motion conference on defendants' proposed motion to dismiss."

<u>Plaintiffs' position</u>.  Because Plaintiffs believe that after reviewing the Parties' letter submissions and hearing the arguments that would be made at a pre-motion conference, the Court will conclude that there is little or no chance it would grant Defendant's proposed motion to dismiss, and because Defendants now indicate that they "hope" to complete document production by the end of February, 2018, Plaintiffs request that the Court order that depositions may commence after that date regardless of whether a pre-motion conference has taken place.  If the Court does not so order, and it does not hold a pre-motion conference, this case will effectively be stayed indefinitely after the completion of document production for no valid reason.  Further, Plaintiffs deny that the ongoing discovery places a "substantial burden on Defendants," because the discovery is actually being handled by Defendants' counsel and employees of the Fund, which has approximately 71 employees and a multi-million-dollar budget, such that discovery cannot reasonably be expected to interfere with the Fund's operations and budget.  Finally, Plaintiffs believe that it is necessary for Defendants to file an answer by no later than January 15, 2018, in

order for both written discovery and depositions to be completed, particularly as to any affirmative defenses.

Defendants' position. The Magistrate Judge correctly ordered that depositions should wait until after document discovery is complete and until the Court has held a pre-motion conference on Defendants' proposed motion to dismiss. There is no good reason to re-visit that decision. To the contrary, it would be inefficient to allow depositions before document production is complete, as Plaintiffs might seek to keep depositions open or to re-depose witnesses if certain documents have not yet been produced. Moreover, allowing depositions to proceed at this point would be unfair. As set forth in Defendants' three letters to the Court, Defendants believe they are likely to prevail on their motion to dismiss in its entirety, or at least that resolution of the motion will narrow the issues in the case substantially. The Fund is a non-profit. The Defendants are unpaid Trustees of the Fund. Preparing for, taking and defending depositions of the Trustees and key Fund employees would be expensive and would require the Fund to re-direct a substantial amount of its time and resources away from its core mission. Defendants are already incurring substantial expenses in responding to Plaintiffs' 19 interrogatories and 134 document requests. Defendants should be afforded the opportunity to seek dismissal of the case before they are forced to incur the further expense of defending and taking depositions. Plaintiffs have failed to offer any way in which they are prejudiced by the current schedule, which was previously ordered by the Magistrate Judge. As to the timing of the Answer, the Court already ordered that Defendants' Answer is due twenty-one days after the Court's decision on the proposed motion to dismiss. Dkt. Order of 5/9/17. There is no need to re-consider the Court's decision. It would be premature to require Defendants to Answer before the Court has ruled on Defendants' motion to dismiss, which Defendants believe will dispose or, or at least significantly narrow, the issues in the case.

Requiring Defendants to Answer the First Amended Complaint before the Court has ruled on their motion to dismiss would also be inconsistent with the default rules set out in Federal Rule of Civil Procedure 12(a)(4). Again, there is no basis for deviating from standard practice here.

3. Cutoff Date for Searching and Producing Relevant Documents.

The Parties disagree as to the cutoff date for which relevant non-email documents should be searched and produced.

<u>Plaintiffs' position</u>. The parties have agreed to a cutoff date for email production of January 22, 2017. They have also agreed to production after that date of the following six limited categories of non-email documents: (a) routine social media reports; (b) routine PR/marketing reports; (c) Collections and Distribution Reports; (d) any new research, PR, marketing and/or third-party agreements begun after January 22, 2017; (e) Trustee Meeting Minutes; and (f) documents concerning any Fund activities Defendants expect to put into evidence at trial. Given the nature of the issues and the documents and interrogatory responses produced by Defendants to date, Plaintiffs contend that there should be no cutoff date for these six limited categories of non-email documents. The documents and interrogatory responses produced by Defendants to date demonstrate that the great majority of the activities (covered by the six document categories) that Defendants contend demonstrate they did not breach their fiduciary duties occurred after Plaintiffs originally filed suit in Texas (August 10, 2016) and, later, filed this case in New York (January 22, 2017). Furthermore, the efficacy of the new, recent efforts will not be determined until some time in the future. Given this, Defendants' proposed cutoff dates are artificial constructs that have nothing to do with relevance.

In their communications with Plaintiffs, Defendants have only offered one reason why there should be a cutoff date after which they do not have to search for and produce the six limited categories of non-email documents: that it is "customary" for there to be a cutoff date.

Defendants' view of what is "customary" cannot overcome the relevance of documents generated after this litigation began, given that Plaintiffs allege a continuing breach of fiduciary duty that is likely to continue in the future without injunctive relief and that Defendants have already provided interrogatory answers and produced documents showing that they will point to many activities they engaged in after the beginning of this litigation as evidence that they allegedly did not breach their fiduciary duties. Furthermore, Defendants cannot show any real burden to producing such limited non-email documents.

After originally proposing a cutoff date of August 10, 2016, the date Plaintiffs originally filed suit in Texas, and Plaintiffs objecting to same, Defendants proposed as a compromise cutoff dates of January 22, 2017, the date this suit was filed, with respect to emails, and June 30, 2017, with respect to non-email documents. Plaintiffs responded, as a compromise, that they would agree to the January 22, 2017 cutoff date for emails if Defendants would agree to a cutoff date for non-email documents as of December 31, 2017, except that Defendants would produce thereafter all Collections and Distribution Reports after they were drafted and internally distributed (because those reports will show how much of the Royalties remain undelivered, an amount that Plaintiffs will need to prove as of the time of trial) and all documents created thereafter that Defendants may use at trial. Defendants refused to extend the cutoff for the six limited categories of non-email documents from June 30, 2017 to December 31, 2017, except that they did agree to produce all documents created after June 30, 2017, that they may use at trial.

For the reasons previously stated, Plaintiffs believe that no cutoff date for the six limited categories of non-email documents is justified in this case. Alternatively, Plaintiffs contend that the cutoff date for those non-email documents should be December 31, 2017, except that all subsequent Collections and Distribution Reports should be produced promptly after their creation

and internal distribution and that Defendants should also have to produce all documents created thereafter that they may use at trial.

<u>Defendants' position</u>. Notwithstanding Plaintiffs' lengthy recitation of the issues, the dispute regarding the end date of Defendants' document production presents a narrow issue for the Court's resolution.

The Parties have already negotiated an agreement as to the end date for Defendants' production of *emails*. The Parties have agreed that they will produce emails from January 1, 2011 through January 22, 2017, which is the day before Plaintiffs' filed their Complaint in this lawsuit. Thus, there is no dispute for the Court to resolve with respect to the end date for the production of emails.

In addition, as set out above, the Parties have successfully negotiated an enumerated list of certain post-January 22, 2017 *non-email* documents that Defendants have offered to produce through June 2017 – six months after Plaintiffs' filed their Complaint in this action. (Those non-email documents are identified in correspondence between counsel dated October 26, November 8, November 13 and November 16, 2017). Indeed, in Plaintiffs' counsel's most recent correspondence, he confirmed that "the agreements and/or proposed compromises" made by Defendants' counsel are "satisfactory to resolve the issues" raised by Plaintiffs, except for the issue of the end date. *See* Letter from R. Mandel to J. Freedman (Nov. 16, 2017). *See also id.* ("With this one exception, we believe the parties have reached compromises on all outstanding discovery issues, pending our review of the forthcoming document production and privilege logs.").

The only remaining dispute concerns the end date for Defendants' production of these enumerated non-email documents. Defendants dispute Plaintiffs' characterization of the relevance of these post-Complaint documents. Nonetheless, in a good faith effort to resolve this dispute,

Defendants have offered to produce the non-email documents through June 2017 – six months after the date when Plaintiffs filed their Complaint. This offer would provide Plaintiffs with the Fund's core operational documents through a date well past the facts and events that form the basis of Plaintiffs' allegations. In addition, Defendants will produce post-June 2017 documents, if any, that Defendants intend to use in the litigation.

Defendants' proposal is entirely reasonable. It will ensure that Plaintiffs receive documents six months past the date the Complaint was filed, as well as any post-Complaint information that Defendants may seek to rely on in defending against Plaintiffs' claims. Plaintiffs claim that they are entitled to special treatment because Defendants have "provided interrogatory answers and produced documents showing that they will point to many activities they engaged in after the beginning of this litigation as evidence that they allegedly did not breach their fiduciary duties." But the fact is that most of those activities began prior to the filing of Plaintiffs' Complaint, which will be covered by the discovery materials Defendants have agreed to produce. Moreover, as explained above, Defendants are agreeing to produce certain documents six months beyond the date the Complaint was filed, and to produce any documents they intend to rely on that extend past that date. Finally, Plaintiffs' request for a never-ending discovery period should be rejected as overbroad and unduly burdensome. It would require Defendants to engage in a constant process of collecting and reviewing documents, with no appreciable benefit to the litigation. Discovery cannot go on forever, and it should not be a vehicle for Plaintiff's counsel to monitor the Fund's operations into the future indefinitely. Indeed, in most litigation, parties do not exchange discovery materials that post-date the Complaint.

Respectfully submitted,


/s/ *Roger L. Mandel*
Roger L. Mandel (pro hac vice)
rlm@lhlaw.net
Bruce E. Bagelman (pro hac vice)
beb@lhlaw.net

LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone:   (214) 560-2201
Telecopier:   (214) 560-2203

-and-

Kieran M. Corcoran
New York Bar No. 2699015
kmc@lhlaw.net

LACKEY HERSHMAN, L.L.P.
1325 Avenue of the Americas
27th Floor
New York, NY  10019
(t) (212) 763-8491
(f) (212) 763-8304

-and-

Eric Zukoski (pro hac vice)
ezukoski@qslwm.com
James H. Birch (pro hac vice)
jbirch@qslwm.com

QUILLING, SELANDER, LOWNDS, WINSLETT AND MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100
(214) 871-2111 (facsimile)

ATTORNEYS FOR PLAINTIFFS
JON BLONDELL, PAUL HARRINGTON, TIMOTHY JOHNSON, STEPHANIE LOWE FKA STEPHANIE MARIE, CHASTITY MARIE, AND CLAYTON PRITCHARD, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS

-and-

*/s/ Jared O. Freedman*
Jared O. Freedman (pro hac vice)
Devi M. Rao (pro hac vice)
jfreedman@jenner.com
drao@jenner.com
JENNER & BLOCK LLP
1099 New York Avenue N.W.
Suite 900
Washington, D.C. 20001
Phone: 202-639-6000
Fax: 202-639-6066

ATTORNEYS FOR DEFENDANTS
BRUCE BOUTON, DUNCAN CRABTREE-IRELAMDN, AUGUSTINO GAGLIARDI, RAYMOND M. HAIR, JR., JON JOYCE, AND STEFANIE TAUB

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of November, 2017, a true and correct copy of the above and foregoing pleading was served via ECF and electronic mail upon all counsel of record.


    */s/ Roger L. Mandel*
    Roger L. Mandel