IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | | |
|---|---|---|
| JON BLONDELL, PAUL HARRINGTON, TIMOTHY JOHNSON, STEPHANIE LOWE, F/K/A STEPHANIE MARIE, CHASTITY MARIE, AND CLAYTON PRITCHARD, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS, | § § § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 1:17-cv-00372-RRM-RML |
| v. | § § | |
| BRUCE BOUTON, DUNCAN CRABTREE-IRELAND, AUGUSTINO GAGLIARDI, RAYMOND M. HAIR, JR., JON JOYCE, AND STEFANIE TAUB, | § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**

PLEASE TAKE NOTICE that Plaintiffs Jon Blondell, Paul Harrington, Timothy Johnson, Stephanie Lowe f/k/a Stephanie Marie, Chastity Marie, and Clayton Pritchard, individually and on behalf of a class of similarly situated persons, through the undersigned counsel, move this Court for an Order: (1) granting final approval of the Parties' settlement; and (2) certifying the Class pursuant to Fed. R. Civ. P. 23(b)(1)(A) for settlement purposes.

A memorandum of law setting forth the cases and authorities relied on in support of Plaintiffs' Unopposed Motion for Final Approval of Settlement is attached hereto.

Respectfully submitted,



_____
Eric Zukoski, Texas Bar No. 24010509
ezukoski@qslwm.com
James H. Birch, Texas Bar No. 00797991
jbirch@qslwm.com

QUILLING, SELANDER, LOWNDS,
WINSLETT AND MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100
(214) 871-2111 (facsimile)

-and-

Roger L. Mandel, Texas Bar No. 12891750
rmandel@jeevesmandellawgroup.com

JEEVES MANDEL LAW GROUP, P.C.
12222 Merit Drive, Suite 1200
Dallas, Texas 75251
Telephone: (214) 253-8300
Telecopier: (727) 822-1499

-and-

Kieran M. Corcoran, KC4935
kieran.corcoran@stinson.com

STINSON LEONARD STREET LLP
1325 Avenue of the Americas, 27th Floor
New York, NY 10019
(t) (212) 763-8491
(f) (212) 763-8304

ATTORNEYS FOR PLAINTIFFS
JON    BLONDELL,    PAUL    HARRINGTON,
TIMOTHY JOHNSON, STEPHANIE LOWE FKA
STEPHANIE MARIE, CHASTITY MARIE, AND
CLAYTON PRITCHARD, INDIVIDUALLY AND
ON  BEHALF  OF  A  CLASS  OF  SIMILARLY
SITUATED PERSONS

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that on October 19, 2020, I discussed the relief requested herein with counsel for Defendants. Defendants do not oppose the relief requested herein.

_____
Eric Zukoski

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 19, 2020, this Motion and Memorandum were served electronically via ECF on counsel for Defendants, Andrew Thomas, Esq. and Andrew Bart., Esq. of Jenner & Block LLP.

_____
Eric Zukoski

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | | |
|---|---|---|
| JON BLONDELL, PAUL HARRINGTON, TIMOTHY JOHNSON, STEPHANIE LOWE, F/K/A STEPHANIE MARIE, CHASTITY MARIE, AND CLAYTON PRITCHARD, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS, | § § § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 1:17-cv-00372-RRM-RML |
| v. | § § | |
| BRUCE BOUTON, DUNCAN CRABTREE-IRELAND, AUGUSTINO GAGLIARDI, RAYMOND M. HAIR, JR., JON JOYCE, AND STEFANIE TAUB, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................ 3

III.  SUMMARY OF PROPOSED SETTLEMENT ..................................................... 5

    A.  The Settlement Class............................................................................... 5

    B.  The Payments to Settlement Class Members and Injunctive Relief...................... 6

    C.  Releases.................................................................................................. 9

    D.  Notice ..................................................................................................... 9

    E.  Opt-Out Rights ..................................................................................... 10

    F.  Objections to the Settlement ................................................................ 10

    G.  Class Representative Service Awards ................................................... 10

    H.  Attorneys' Fees and Expenses ............................................................. 10

    I.  No Other Agreements ........................................................................... 11

IV.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AGREEMENT ........................................................................ 11

    A.  Standard for Approval .......................................................................... 11

    B.  The Settlement Is Procedurally Fair .................................................... 11

    C.  The Settlement Is Substantively Fair ................................................... 12

        1.  The Litigation Is Complex and Would Be Expensive and Lengthy ...................................................................................... 13

        2.  Sufficient Discovery Was Completed to Allow the Parties to Resolve the Case ...................................................................... 15

        3.  Risk of Establishing Liability ................................................... 17

        4.  Risks of Establishing Damages................................................. 18

        5.  Risk of Maintaining Class Status ............................................. 19

        6.  The Ability of Defendants to Withstand a Greater Judgment ................. 20

7.      The Settlement Constitutes an Incredible Result Given the Possible Recovery and the Risks of Litigation ........................................ 20

V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................ 23

       A.     Numerosity Is Satisfied........................................................................ 23

       B.     Commonality Is Satisfied...................................................................... 24

       C.     Typicality Is Satisfied .......................................................................... 24

       D.     Adequate Representation ....................................................................... 25

       E.     The Class Satisfies Rule 23(b)(1)(A)................................................... 26

VI.    THE FORM AND METHOD OF CLASS NOTICE WAS APPROPRIATE AND NO OBJECTIONS WERE RECEIVED ................................................................. 28

       A.     The Scope of the Notice Program Satisfied Due Process and Rule 23................. 29

VII.   CONCLUSION................................................................................................ 31

# TABLE OF AUTHORITIES

## Cases

*Alday v. Raytheon Co*., 619 F. Supp. 2d 726 (D. Ariz.2008) ......................................................... 27

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 23, 26, 27

*Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*, 270 F.R.D. 488 (N.D. Cal. 2010) .......................................................................................................................................... 27

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207-JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ............................................................................................................................... 20

*Charron v. Weiner*, 731 F.3d 241 (2d Cir. 2013) .......................................................................... 14

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).................................. passim

*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................................................................................................... 14

*Cutler v. Perales*, 128 F.R.D. 39 (S.D.N.Y. 1989) ........................................................................ 24

*D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451 (E.D.N.Y. 1996) .................................... 25

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................................ 12

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .......................................................... 23

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) .................................................................... 24

*Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y. 1981) .............................. 25

*Gordon v. Dadante*, 2008 WL 1805787 (N.D. Ohio 2008) ............................................................ 21

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ........................................................................................................................... 20

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ................................................................ 24

*In re AOL Time Warner Inc.*, No. 02-cv-5575-SWK, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................................................................................................................... 21, 24

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........ 14, 15

*In re Bear Stearns Co. Sec. Derivative and ERISA Litig*., 909 F. Supp. 2d 259 (S.D.N.Y. 2012)15

*In re Cendant*, 264 F.3d at 238 ............................................................................................... 19, 21

*In re Crazy Eddie Sec. Litig.,* 824 F.Supp. 320 (E.D.N.Y. 1993)................................................... 21

*In re Datatec Sys., Inc. Sec. Litig.,* No. 04–CV525, slip op., 2007 WL 4225828 ........................ 22

*In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436 (S.D.N.Y. 2004) .......... 13, 15, 18, 21

*In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-cv-6689-SAS, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................................................................................ 21

*In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996)................................... 26

*In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. 265 (S.D.N.Y. 2007) ............... 28

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................................................................................... 29

*In re NASDAQ Mkt–Makers Antitrust Litig.,* 187 F.R.D. 465 (S.D.N.Y. 1998) ......................... 20

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).................................... 17

*In re Prudential Sec., Inc., L.P. Litig.,* MDL No. 1005, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ............................................................................................................................ 21

*In re Prudential*, 148 F.3d 283 (3d Cir. 1998) .................................................................. 19

*In re Suprema Specialties, Inc. Sec. Litig.,* No. 02–168, slip op., 2008 WL 906254 (D.N.J. Mar. 31, 2008) ........................................................................................................................ 22

*In re Vivendi Universal, S.A.*, 242 F.R.D. 76 (S.D.N.Y. 2007) ....................................... 25

*In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231 (D. Del. 2002) ........................ 18, 21

*Kaplan v. Chertoff*, 2008 WL 200108 (E.D. Pa. 2008) ................................................... 19

*Kindle v. Dejana,* 315 F.R.D. 7 (E.D.N.Y. 2016) ........................................................... 25

*Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95-cv-4954-DAB, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ................................................................................................................. 15

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ............................................................... 21

*Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400 (W.D.N.Y. 2011) ................................. 19

*Penn. Ave. Funds v. Inyx Inc.,* No. 08 Civ. 6857(PKC), 2011 WL 2732544 (S.D.N.Y. July 5, 2011) ............................................................................................................................ 26

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................... 24

*Saddle Rock Partners Ltd. v. Hiatt*, No. 96-cv-9474-SHS, 2000 WL 1182793 (S.D.N.Y. Aug. 21, 2000) ............................................................................................................................ 24

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ... 14

*Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55 (S.D.N.Y. 2003) .................................. 17

*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992) ................................. 24

*Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96 (2d Cir. 2005) ................................... 11, 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (U.S. 2011) ............................................ 29

*Walsh v. Great Atl. & Pac. Tea Co.,* 726 F.2d 956 (3d Cir.1983) ................................... 29

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ............................................... 11, 23

*Wells v. Hurlburt Road Co.*, 43 N.Y.S. 637 (N.Y. Sup. Ct. App. Div. 2016) ................. 28

## Statutes

17 U.S.C. § 1006(b)(1) ........................................................................................... 1, 6, 28

17 U.S.C. § 114(g)(2)(B) ......................................................................................... 1, 6, 28

17 U.S.C. § 114(g)(2)(C) ......................................................................................... 1, 6, 28

Audio Home Recording Act of 1992 ............................................................................ 6, 28

Class Action Fairness Act ................................................................................................. 9

Copyright Act of 1976 ................................................................................................... 28

Digital Millennium Copyright Act of 1998 .................................................................. 6, 24

Digital Performance Right in Sound Recordings Act of 1995 ....................................... 6, 24

## Rules

Fed. R. Civ. P. 23 ............................................................................................................. 3

Fed. R. Civ. P. 23(a) ........................................................................................... 27, 28, 32

Fed. R. Civ. P. 23(a)(2)..............................................................................................29, 30

Fed. R. Civ. P. 23(a)(3)....................................................................................................30

Fed. R. Civ. P. 23(a)(4)....................................................................................................31

Fed. R. Civ. P. 23(b).........................................................................................................32

Fed. R. Civ. P. 23(b)(1)....................................................................................................35

Fed. R. Civ. P. 23(b)(2)....................................................................................................35

Fed. R. Civ. P. 23(c)(2)(A)...........................................................................................5, 35

Fed. R. Civ. P. 23(e)(3).....................................................................................................11

Fed. R. Civ. P. 23(f).........................................................................................................22

Fed. R. Civ. P. 23(h).....................................................................................................5, 11

Fed. R. Civ. P. 54(d)(2).....................................................................................................11

Local Rule 23.1.................................................................................................................11

**Treatises**

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (3d ed. 1992)..................28, 31

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002).......................12

5 William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2015)...........................................35

## I.   INTRODUCTION

The subject matter of this class action is the statutory Royalties[1] payable to session musicians and background vocalists (regardless of whether they are union members or not and regardless of whether they recorded pursuant to a union contract or not) ("Non-Featured Performers") pursuant to the Digital Millennium Copyright Act, Digital Performance Right in Sound Recordings Act, and Audio Home Recording Act, the pertinent provisions of which are codified at 17 U.S.C. § 114(g)(2)(B) & (C) and 17 U.S.C. § 1006(b)(1). Plaintiffs contend that Defendants, who are current and former trustees of the AFM & SAG-AFTRA Intellectual Property Rights Distribution Fund (" the Fund), a New York trust formed by the unions, that was selected to pay these Royalties to both union and non-union members, improperly failed to identify, locate, and pay the Non-Featured Performers entitled to these Royalties and to the extent that they did pay these Royalties they did so with a preference for union members over non-union members.

Plaintiffs allege that such failures constitute a breach of Defendants' fiduciary duties as trustees and that they control Royalties which in equity and good conscience should be paid to Plaintiffs and the Class pursuant to the cause of action for money had and received. Defendants deny these allegations. Notwithstanding the positions of the Parties, in the interest of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings to trial, and after extensive negotiations, they have entered into a "Settlement Agreement and Release" ("Settlement") (attached as Exhibit 1 to the Declaration of Eric Zukoski filed as ECF 76-1 ("Zukoski Decl.").

The Settlement requires Defendants to distribute all Unclaimed Royalties received by the Fund from 2011 through 2016, which, as of November 30, 2019, amounted to approximately $45,848,799.99 in Royalties owed to 61,298 Class Members. The Settlement also requires

---

[1] Capitalized terms not defined in this Motion have the meaning set forth in the definitions section of the Settlement, which is attached as Exhibit 1 to the Declaration of Eric Zukoski filed as ECF 76-1.

Defendants to undertake extensive affirmative steps [2] to locate and pay Class Members the Unclaimed Royalties, which steps it will continue for Royalties received in 2017-2019. Any remaining amounts will be distributed pro-rata to the Non-Featured Performers who the Fund previously successfully paid, such that the Settlement will result in a full distribution of the Unclaimed Royalties held in the Fund that are the subject of the Action. The pro rata distribution for the remaining Unclaimed Royalties will take place by April 30, 2022. For Royalties it received in 2017, 2018 and 2019, the Fund will distribute any Unclaimed Royalties on a pro rata basis to the Non-Featured Performers it previously paid successfully by April 30, 2024, April 30, 2025, and April 30, 2026, respectively. For Royalties collected by the Fund in 2020 and after, assuming no changes in the law and absent good cause, the Fund will endeavor to pay any Unclaimed Royalties on such a pro rata basis no later than the next regular distribution following six years after the year of receipt.

The Fund will retain an advertising/marketing consultant with specialized expertise in the music industry and will work with that consultant to develop a comprehensive advertising/marketing plan for the Fund to make Non-Featured Performers aware of the Royalties and the Fund and to cause them to identify themselves to the Fund so they may be paid Royalties owed to them. The Fund will also work with SL Business Informatics/SingerLewak ("SL"), to redesign the Fund's business practices, processes, workflows, and internal controls to increase the effectiveness and/or efficiency by which the Fund identifies, locates, and pays Non-Featured Performers. The Fund will distribute Royalties received in 2020 and after based upon the plans it develops in consultation with the consultants.

The Parties have agreed that each of the Plaintiffs will be paid $1,500 out of the Unclaimed

---

[2] These steps are set forth in paragraphs 4.02A through 4.02E8 in pages 9-11 of the Settlement.

Royalties as class representative service awards and that the costs of notice and settlement administration will also be deducted from that fund. The Parties have agreed to submit to the Court the amount of the reasonable attorneys' fees and expenses to be paid to Plaintiffs' attorneys with the amount of any such award to be paid out of the Unclaimed Royalties.

As discussed below, the Settlement is fair, adequate and reasonable. It is based on a thorough review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, it was the product of hard-fought litigation and arm's length settlement negotiations between experienced counsel, and it contains no significant deficiencies.

Plaintiffs' Counsel and Plaintiffs, as class representatives, have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens, and costs entailed by further prosecution of their claims, as well as the substantial benefits the Class will receive, that a resolution and compromise on the terms set forth in the proposed Settlement Agreement is fair, reasonable, adequate, and is in the best interests of the proposed Class. In addition, the proposed Class Notice advised Class Members of the key elements of the Settlement, and the notice program was the best practicable program under the circumstances and fully complies with the requirements of Fed. R. Civ. P. 23 and due process.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

The significant procedural history is as follows. Plaintiffs Jon Blondell, Paul Harrington, Timothy Johnson, Stephanie Lowe f/k/a Stephanie Marie, Chastity Marie, and Clayton Pritchard filed this Action on January 23, 2017. [3] *See* ECF 1. Plaintiffs subsequently filed a First Amended

---

[3] Prior to filing the Action and throughout the Action, Class Counsel conducted a thorough examination, investigation, and evaluation of the relevant law and facts to assess the merits of the claims and potential defenses. This included extensive legal and factual research and analysis, statistical analysis, expert analysis, document and evidence review, musician and singer interviews. Class Counsel retained and worked with a music royalty and technology expert and a marketing expert.

Complaint and a Second Amended Complaint on April 24, 2017 and February 7, 2018, respectively. *See* ECF 23 AND ECF 48. In the Second Amended Complaint, Plaintiffs brought two causes of action against Defendants: (1) breach of fiduciary duty and (2) money had and received. ECF 48, ¶¶ 132-149.

Defendants filed a Pre-Motion Letter on August 18, 2017 (ECF 38); Plaintiffs filed a Pre-Motion Letter on August 23, 2017 (ECF 39); the Court conducted a conference regarding Defendants' Pre-Motion Letter on January 24, 2018; and the Parties filed the Motion to Dismiss Plaintiffs' Second Amended Complaint, Plaintiffs' Response, and Defendants' Reply on April 11, 2018 (ECF 52-55). The Court denied the Motion to Dismiss Plaintiffs' Second Amended Complaint on March 29, 2019 (ECF 65).

In addition to the informal factual investigation and analysis conducted by Class Counsel, the Parties conducted extensive formal discovery commencing in August of 2017, which included: (1) disclosures, supplemental disclosures, numerous rounds of interrogatories and supplemental interrogatories and responses, numerous rounds of requests for production and supplemental requests for production and responses, (2) review by Plaintiffs of approximately 6,852 pages of documents produced by Defendants and review by Defendants of approximately 1,722 pages of documents produced by Plaintiffs, and (3) depositions of two of the defendant trustees in July of 2019. The scope of discovery between August 2017 and July 2019 was hotly disputed between the Parties and only resolved through months of negotiations. At the time the Parties agreed that settlement negotiations justified delaying further discovery, the Parties had scheduled the depositions of all of the remaining Defendants, key Fund employees and all of the Plaintiffs.

The significant background regarding the Settlement is as follows. In May 2019, the Parties commenced discussions regarding the possibility of resolving this matter. (Zukoski Decl. at ¶ 10.)

During May through November of 2019 the Parties conducted extensive discussions regarding the possibility of and terms for settlement. (*Id.*) Before and during all settlement discussions, the Parties exchanged sufficient information to permit Plaintiffs and Class Counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions. (*Id.*)

On November 18, 2019, the Parties advised the Court that a settlement in principle had been reached. (11/18/19 Minute Entry.[4]) The Parties continued discussions with respect to Plaintiffs' attorneys' fees and expenses but were unable to reach agreement as to an amount. The Parties executed a Memorandum of Settlement on or about January 17, 2020. As to attorneys' fees and expenses, the Parties agreed that they will be determined by the Court pursuant to Federal Rules of Civil Procedure 54(d)(2) and 23(h), Local Rule 23.1, and any applicable Court policies and procedures. (ECF 74.) Plaintiffs filed their Unopposed Motion for Approval to Give Notice of Proposed Class Action Settlement on 3/20/2020 (ECF 76). The Court granted the Motion on 4/16/2020.[5] The claims administrator and the Parties fulfilled the notice program (with one nonconsequential substitution described further below) set forth in their Motion For Approval to Give Notice and approved by the Court and there have been no objections by any class members to the Settlement.

### III.    SUMMARY OF PROPOSED SETTLEMENT

#### A.    The Settlement Class

Under the terms of the Settlement, the proposed Settlement Class is defined as:

---

[4] There is no docket number associated with this minute entry.

[5] There is no docket number associated with this minute entry. Because the Parties sought certification of a mandatory non-opt-out Class pursuant to FRCP 23(b)(1)(A), FRCP 23(c)(2)(A) did not require notice of the Settlement be given to the Class. Nonetheless, the Parties, with Court approval, gave notice to the Settlement Class and a chance for its members to object to the Settlement and/or Class Counsel's proposed fees and expense recovery for the reasons set forth in their Motion for Approval to Give Notice.

all NFPs[6] (or their beneficiaries, if deceased) entitled to receive Unclaimed Royalties for Distribution and NFPs (or their beneficiaries, if deceased) who performed on a Covered Recording and whom the Fund had previously not identified.

(SA ¶ 1.06.)

### B.     The Payments to Settlement Class Members and Injunctive Relief

The Settlement requires the Fund to undertake a number of extensive specified actions to pay the Class Members, between now and December 31, 2021, the amount of the Unclaimed Royalties for Distribution from Source Years 2011 through 2016, which, as of November 30, 2019, amounted to approximately $45,822,620.71 in DPRA Royalties[7] and $26,179.28[8] in AHRA Royalties,[9] payable to approximately 59,023 currently-identified Class Members and 2,275 currently-identified Class Members, respectively. (SA ¶¶ 1.35, 4.01 and 4.02A-E8.) The Fund will continue to use these enhanced actions to pay entitled NFPs the over $150 million in Royalties collected by the Fund from 2017 through 2019. The Parties believe these steps will result in payment of a significant portion of the Unclaimed Royalties and a significantly higher rate of payment of the 2017-2019 Royalties.

As set forth in greater detail in the Settlement Agreement, these steps include: (a) the Fund will email all Class Members for whom the Fund has email addresses and provide a participant information form as well as additional information to assist the Class members in claiming and receiving the Unclaimed Royalties; (b) for each Class Member owed $750 or more the Fund will undertake multiple agreed processes (these include Google searches, social media searches,

---

[6] "NFP" means collectively nonfeatured musicians and nonfeatured vocalists as these terms are referenced in 17 U.S.C. § 114(g)(2)(B) & (C) and 17 U.S.C. § 1006(b)(1). (SA ¶ 1.21).

[7] "DPRA Royalties" refers to the royalties provided for in the Digital Performance Right in Sound Recordings Act of 1995 and/or the Digital Millennium Copyright Act of 1998 collected by the Fund and attributed to sound recordings which the Fund has designated as Covered Recordings. (SA ¶ 1.16).

[8] The Distribution Amount does not include settlement amounts received by the Fund relating to US recordings created prior to February 15, 1972 or royalties paid to the Fund from non-U.S. collectives or neighboring rights societies.

[9] "AHRA Royalties" means the royalties identified in the Audio Home Recording Act of 1992 collected by the Fund and attributed to sound recordings which the Fund has designated as Covered Recordings. (SA ¶ 1.04).

exploiting professional and industry networks, etc.) targeted at locating the Class Member; (c) for Class Members owed between $100 and $750 the Fund will undertake Lexis or similar searches followed by undertaking multiple agreed processes including contact attempts through email; and (d) and the Fund will perform quarterly cross-checks between the Fund's Unclaimed Royalties lists and union records.

For Royalties that were distributed to the Fund from 2017 to 2019 by SoundExchange (DPRA Royalties) and by the U.S. Copyright Office (AHRA Royalties), the Fund will attempt to identify, obtain contact information for and pay NFPs using the methods and processes summarized above, and as informed by its work with the business consultant it has agreed to retain as part of the Settlement. The Fund will have three (3) years after the end of the Source Year to identify the NFPs entitled to receive Royalties for that Source Year, and for those NFPs it identifies, it shall attempt to obtain contact information for those NFPs for whom it does not already have such information and shall send payments to those it identifies and for whom it has sufficient contact information. At the end of three (3) years, it shall cease further identification efforts and concentrate solely on obtaining contact information and achieving payment for those that remain on the Unclaimed List for another three (3) years.

At the end of six (6) years after the Source Year, the Fund shall cease further efforts and pay any Unclaimed Royalties for that Source Year on a pro rata basis to all Participants to whom it previously successfully made payment for that Source Year and for whom it still has valid payment information. The pro rata payments can be combined with payments for other Source Years and shall be sent no later than April 30 of the year following the end of the sixth year. For example, for Source Year 2018 Royalties, the Fund shall have until December 31, 2021, to identify (and attempt to pay) all NFPs entitled to payment of those Royalties, until December 31, 2024, to

complete payment of as many identified NFPs as possible, and until April 30, 2025, to make the pro rata payment of the Unclaimed Royalties from that year. For Source Years 2020 and after, the Fund agrees that, absent a change in the law or good cause, it shall endeavor to distribute any remaining Unclaimed Royalties for a Source Year on a pro rata basis to all Participants to whom it previously successfully made payment for that source year, and for whom it still has valid payment information, no later than the April 30th following six years after the Source Year. To the extent necessary to do this, the Defendants shall amend the Fund's Distribution Guidelines.

The Fund will also retain an advertising/marketing consultant with specialized expertise in the music industry and will work with that consultant to develop a comprehensive advertising/marketing plan for the Fund, which the Fund will adopt within nine (9) months after the Court's entry of an order approving the sending of notice to the Class. The purpose of the advertising/marketing plan is to enhance the awareness of NFPs to the existence of the Royalties and the Fund and to get them to provide the Fund with the necessary information to allow the Fund to pay them the Royalties they are owed. Within nine (9) months after adoption of the plan, an employee of the Fund will file with the Court under seal (and serve on Plaintiffs' attorneys) a sworn certification attesting that the Fund hired an advertising/marketing consultant with specialized expertise in the music industry; that the Fund worked with the consultant to develop a comprehensive advertising/marketing plan; that the Fund adopted the plan; and that the Fund has implemented the plan, is in the process of doing so, or has a good faith basis for not having done so. The certification will include an executive summary of the advertising/marketing plan.

The Fund will also work with a business consultant (SL Business Informatics/SingerLewak or "SL"), to redesign the Fund's business practices, processes, workflows, and internal controls to increase the efficiency by which the Fund identifies, locates, and pays NFPs. Within nine (9)

months after the Court's entry of an order approving the sending of notice to the Class, an employee of the Fund will file under seal (and serve on Plaintiffs' attorneys) a sworn certification with the Court attesting that the Fund has hired and/or continued to work with SL to redesign the Fund's business practices, processes, workflows, and internal controls; that the Fund has adopted a business management plan incorporating SL's recommendations, along with an executive summary of that plan; and that the Fund has implemented the business management plan, is in the process of doing so, or has a good faith basis for not having done so.

### C.    Releases

As set forth in greater detail in the Settlement Agreement, [10] upon Final Approval, Plaintiffs and Settlement Class Members will release the Defendants and the Defendants will release the Plaintiffs from all claims of any kind raised in the Action. The release does not cover claims related to amounts received by the Fund relating to a settlement agreement with regard to U.S. recordings created prior to February 15, 1972, royalties paid to the Fund from non-U.S. collectives or neighboring rights societies, and the claims asserted against Defendants and the Fund in Civil Action 2:18-cv-07241 in the United States District Court for the Central District of California, *Kevin Risto v. Screen Actors Guild-American Federation of Television and Radio Artists, et al.*

### D.    Notice

As provided for in the Settlement Agreement, the Settlement Administrator (KCC Class Action Services, LLC) provided publication notice, sent out the notices required by Class Action Fairness Act ("CAFA"), responded to communications from potential Class Members, processed objections, set up and monitored a webpage and telephone number regarding the Settlement, and prepare a declaration for the Court reporting on its activities (see Declaration of Jeanne Chernila,

---

[10] Settlement at paragraph 4.07.

attached hereto as Exhibit 1).

### E.    Opt-Out Rights

For the reasons explained below (see topic 4 on p. 28), the Parties have requested that the Court certify the Class as mandatory, non-opt out class pursuant to FRCP 23(b)(1)(A).

### F.    Objections to the Settlement

There have been no objections to the Settlement. *See* Declaration of Jeanne Chernila.

### G.    Class Representative Service Awards

Within ten (10) days of the Court entering the Final Judgment and regardless of whether the Final Judgment is appealed, Defendants will pay $1,500 to each of the Plaintiffs out of the Unclaimed Royalties as awards for their services as class representatives. If either the settlement as a whole or these awards in particular (in whole or in part) are reversed on appeal, Plaintiffs shall pay Defendants back in whole or in part within ten (10) days of the reversal becoming final. (SA. ¶ 4.06.)

### H.    Attorneys' Fees and Expenses

The Parties agreed to submit to the Court the amount of the reasonable attorneys' fees and expenses of Class Counsel, to be determined by the Court pursuant to Federal Rules of Civil Procedure 54(d)(2) and 23(h), Local Rule 23.1, and any applicable Court policies and procedures. Class Counsel filed their Motion for Approval of Attorneys' Fee Award and Reimbursement of Costs on 9/23/2020 (ECF 85). Per the Settlement Agreement, attorneys' fees and expenses shall be paid out of the Unclaimed Royalties in the amount awarded by the Court. To the extent that some Class Members are paid by the Fund out of the Unclaimed Royalties prior to the date the Fund pays the Court's award of attorneys' fees and expenses out of the Unclaimed Royalties, the Fund shall pay out of its expense fund to Plaintiffs' counsel the amounts, if any, of the payments

to the Class Members that would have been deducted for the attorneys' fees and expenses had those Class Members not been paid before the payment of the attorneys' fees and expenses. In such a situation, to the extent there are later Undistributed Royalties to be redistributed pro rata, the Fund may reimburse its expense fund with such Undistributed Royalties before the pro rata redistribution. (SA ¶ 4.08.)

### I.    No Other Agreements

Other than the Settlement Agreement itself, not other agreements exist that would be required to be identified under FRCP 23(e)(3).

### IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

### A.    Standard for Approval

Courts generally favor settlement of class action lawsuits. *See Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (affirming approval of class action settlement and emphasizing "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate. There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (affirming approval of class settlement) (citation omitted).

### B.    The Settlement Is Procedurally Fair

In assessing procedural fairness, courts examine the negotiating process leading to the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). A strong initial

presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after discovery by experienced counsel and after arm's length negotiations. *Wal-Mart Stores, Inc.,* 396 F.3d at 116. The Declarations of Eric Zukoski (ECF 76-1) and Roger L. Mandel (ECF 76-2) attest to the procedural fairness of the Settlement.

Here, the proposed Settlement was reached as a result of extensive arm's length negotiations between the Parties and their counsel who have considerable experience litigating class action matters. (*See e.g.* Zukoski Decl. ¶¶ 10 and 12-14; Mandel Declaration ¶¶ 4-6.) Class Counsel conducted discovery, investigated the facts and underlying events relating to the subject matter of the claims, and carefully analyzed the applicable legal principles. (Zukoski Decl. ¶¶ 5 and 8-10; Mandel Decl. ¶¶ 7-8.) Class Counsel conducted a thorough examination, investigation, and evaluation of the relevant law and facts to assess the merits of the claims and potential defenses. (*Id*.) This included extensive legal and factual research and analysis, statistical analysis, expert analysis, document and evidence review, and musician and singer interviews. (*Id*.) Class Counsel retained and worked with a music royalty and technology expert and a marketing expert. (Zukoski *Decl.* ¶ 9.) The negotiations leading to settlement occurred over the course of months and included numerous other telephonic and email discussions. (Zukoski Decl. ¶¶ 10-11.)

## C.     The Settlement Is Substantively Fair

The Second Circuit has identified nine factors (the *Grinnell* factors) that should be considered in determining the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds*

by *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citation omitted).

As applied here, the *Grinnell* factors weigh heavily in favor of preliminary approval. In particular, factors 8 and 9 compel approval, because the Settlement obtains virtually 100% of the injunctive relief which Plaintiffs sought in this case and payment of 100% of the monetary relief which Plaintiffs sought, making the Settlement extraordinary when compared to both the best possible recovery and a settlement that takes into consideration the risks of continued litigation.

The Declarations of Eric Zukoski and Roger L Mandel provide the necessary evidence in support of the fairness, reasonableness and adequacy of the Settlement. In particular, Mr. Mandel offers his expert opinion to that effect.

1. *The Litigation Is Complex and Would Be Expensive and Lengthy*

With regard to the first *Grinnell* factor, courts have consistently recognized the complexity, expense, and likely duration of litigation as critical factors in evaluating the reasonableness of a class action settlement. *Charron v. Weiner,* 731 F.3d 241, 247 (2d Cir. 2013). Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).

Here, approval of the Settlement will mean a present recovery for Class Members. While Plaintiffs believe that the Action has merit and that they ultimately would prevail at trial, continued litigation would likely last for years before any judgment might be entered in favor of the Class. If not for the Settlement, a trial could occupy significant attorney and Court time and involve

significant costs. Then, any judgment favorable to the Class likely would be the subject of post-trial motions and appeals, which would significantly prolong the Action. Delay, not just at the trial stage, but also through post-trial motions and the appellate process, could force Settlement Class Members to wait even longer for any recovery, further reducing its value. *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery."). Even a trial win does not guarantee a recovery to members of a class, because there is always a risk of reversal on appeal.

Delay would be far more injurious to these Class Members than those in a typical class action for two reasons. First, many of the Covered Recordings for which payment from the Unclaimed Royalties will be made date back years and even decades in many cases, and many of the Class Members who performed on these recordings are already elderly, with many passing away every month. Payment of estates takes much longer and is much more complicated. And, of course, generally people would like to receive money to which they are entitled before they die.

Second, the key issue in this case is Plaintiffs' complaints about Defendants' failure to locate and pay enough Class Members. The more time passes, the more likely Class Members will have moved and will be more difficult to locate. Delay will increase the difficulty of getting Class Members paid, an already difficult task.

2.    *Sufficient Discovery Was Completed to Allow the Parties to Resolve the Case*

In considering *Grinnell* factor three, [11] the question "is whether the parties had adequate information about their claims." *In re Glob. Crossing*, 225 F.R.D. at 458. This factor is "intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" *Id.* (quoting *Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95-cv-4954-DAB, 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28, 1999)); *In re Bear Stearns Co. Sec. Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("[T]he question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiff's causes of action for purposes of settlement"); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 ("To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.").

The significant discovery events are as follows. The Parties commenced written discovery on August 7, 2017, wherein the Parties exchanged initial disclosures; Plaintiffs served Supplemental Initial Disclosures on August 16, 2017; Plaintiffs served their first set of interrogatories and their first requests for production on Defendants on June 30, 2017 and Defendants served written objections and responses thereto on July 31, 2017; the Parties conferred multiple times via telephone and in writing regarding Plaintiffs' objections to Defendants' responses, and those objections were resolved; Plaintiffs served their second set of interrogatories and second requests for production on Defendants on August 10, 2017, and Defendants served

---

[11] The second factor, reaction of the Class, is inapplicable at this stage.

objections and responses thereto on September 11, 2017; the Parties conferred multiple times via telephone and in writing regarding Plaintiffs' objections to Defendants' responses and those objections were resolved; Plaintiffs served their third requests for production on Defendants on August 18, 2017, and Defendants served objections and responses thereto on September 18, 2017; the Parties conferred multiple times via telephone and in writing regarding Plaintiffs' objections to Defendants' responses and those objections were resolved; Plaintiffs served their third set of interrogatories and their fourth requests for production on Defendants on September 5, 2017, and Defendants served objections and responses thereto on October 5, 2017; the Parties conferred multiple times via telephone and in writing regarding Plaintiffs' objections to Defendants' responses, and those objections were ultimately resolved. In total, Defendants produced, and Plaintiffs reviewed, approximately 6,852 pages of documents during the period July 2017 through July 2019; and Plaintiffs produced, and Defendants reviewed, approximately 1,722 pages of documents during the period August 2017 through July 2019.

In addition to discovery propounded between the Parties, Class Counsel examined, investigated, and evaluated the relevant law and facts to assess the merits of the claims and potential defenses. This included extensive legal and factual research and analysis, statistical analysis, expert analysis, document and evidence review, and musician and singer interviews. Class Counsel also retained and worked with a music royalty and technology expert and a marketing expert. (Zukoski Decl. ¶¶ 5 and 8-10; Mandel Decl. ¶¶ 7-8.)

As noted above, Class Counsel conducted extensive investigation, analysis, and discovery; and they obtained all necessary information to consider their Plaintiffs' position and the full scope of the damages at issue. The accumulation of the information through Class Counsel's investigation and discovery efforts permitted Plaintiffs to be well informed and to engage in

effective settlement negotiations with Defendants.

###### 3.    Risk of Establishing Liability

Pursuant to the fourth *Grinnell* factor, in assessing a settlement, a court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *Grinnell*, 495 F.2d at 463. Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability. *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 63 (S.D.N.Y. 2003). Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement).

Here, in order to come to a judgment in this Action, the Parties would have to litigate extensively, through discovery, class certification, summary judgment, trial, and then appeals. Defendants articulated a number of defenses that could be accepted by the Court or jury. These defenses are outlined in the Motion to Dismiss (ECF 52) and in Defendants' Answer and Affirmative Defenses (ECF 68-3). Defendants maintain, *inter alia*, that the Plaintiffs have mis-characterized the Fund's activities to carry out its duties and that its actions have been prudent and appropriate under the circumstances such that no breach of fiduciary duty has occurred. The Fund also maintained that the Unclaimed Royalties would be disbursed in accordance with the terms of the Fund even without Court intervention such that the Plaintiffs cannot maintain a claim for money had and received. Defendants further assert the defenses of laches, payment, accord and satisfaction, and statute of limitations (ECF 68-3).[12] Without a settlement, the Defendants would

---

[12]Defendants also asserted that Defendants are vested with the discretion to solely determine the means and methods that they employ to identify NFPs and distribute royalties and that disagreement over the means and methods selected does not constitute a breach of fiduciary duty under NY law, that money acquired lawfully and rightfully cannot form the basis for a claim of money had and received under NY law, and that the Copyright Royalty Board is the exclusive forum for resolution of disputes regarding 17 U.S.C. § 114(g)(2)(B) & (C) and 17 U.S.C. § 1006(b)(1). (SA ¶ 1.21).

litigate the case vigorously, forcing Plaintiffs to overcome determinative motions and to demonstrate that the putative classes should be certified. *See In re Glob. Crossing,* 225 F.R.D. at 456.

While Plaintiffs believe that they would prevail, they also recognize there is no guarantee of success at a trial on the merits, or that judgment in their favor would be upheld on appeal. Accordingly, in the absence of a settlement, there is a real risk that the Class will recover relief significantly less valuable than that provided by the Settlement—or even nothing at all. The distribution of all of the Undistributed Royalties along with the location procedures provided in the Settlement Agreement and the future benefit from the injunctive relief, when viewed in the context of the risks of litigation, weigh heavily in favor of preliminary approval.

4.       *Risks of Establishing Damages*

Similar to the fourth factor, "this inquiry [the fifth *Grinnell* factor] attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 256 (D.Del.,2002)  (quoting *In re Cendant*, 264 F.3d at 238 (citation omitted) . More particularly, "the court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement." *Id*. (citing *In re Prudential*, 148 F.3d at 319.) As explained below, the settlement recovers nearly 100% of the injunctive relief sought, while Defendants challenged whether such injunctive relief could be awarded by the Court even if they were found liable. (ECF 52 at pp. 21-23[13]). Further, Plaintiffs sought to force Defendants to pay out 100% of the Unclaimed Royalties through, first, enhanced efforts to identify, locate and pay Class Members and, second, to pay out pro rata any amounts remaining after the

---

[13]Defendants asserted that the relief sought by Plaintiffs would constitute improper "continuous judicial supervision" over "highly technical issues" and such oversight if at all was vested in the Copyright Royalty Board. MTD at pp. 21-23.

enhanced efforts are exhausted. Accordingly, the Settlement recovers 100% of the monetary relief that could have been recovered through a complete and total litigation victory. *See, e.g. Kaplan v. Chertoff*, 2008 WL 200108, at *11 (E.D. Pa. 2008) (Settlement approved where best outcome for plaintiffs at trial "would have similar results to the proposed settlement"). Accordingly, further litigation only would serve to increase the costs and risks to the Class while having no substantially positive effect on the outcome, such that this factor strongly favors the Settlement.

5.    *Risk of Maintaining Class Status*

The sixth *Grinnell* factor—the risk of maintaining the class action—is typically considered in the context of unopposed certification motions for settlement purposes. *Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("Although class certification has been approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of settlement.").

Here, Plaintiffs are confident that they are adequate class representatives and more than capable of achieving and maintaining class status throughout trial. Nevertheless, Defendants would oppose any attempt made by Plaintiffs to certify this case. Even if the Plaintiffs received class certification, Defendants would have the right to seek a Rule 23(f) appeal and to attempt to decertify the class at each step of the litigation including before trial, during trial, or on appeal. *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207-JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (noting that there "is no assurance of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time during the proceedings."); *In re NASDAQ Mkt–Makers Antitrust Litig.,* 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998) (risk of class being decertified at trial or risk of class certification being reversed on appeal supported approval of settlement). The risk that Plaintiffs face in certifying and maintaining

certification of the Action weighs heavily in favor the proposed Settlement.

      6.      *The Ability of Defendants to Withstand a Greater Judgment*

This seventh factor is not relevant in this case, as Plaintiffs sought to force Defendants to distribute accumulated funds in their possession.

      7.      *The Settlement Constitutes an Incredible Result Given the Possible Recovery and the Risks of Litigation*

*Grinnell* factors eight and nine require a court to analyze the "range of reasonableness" of the settlement fund in light of the case and in light of all the risks associated with litigation. *Grinnell*, 495 F.2d at 463. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-cv-6689-SAS, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed). In considering the reasonableness of the proposed Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *In re AOL Time Warner Inc.*, No. 02-cv-5575-SWK, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

In any event, a 100% recovery is not required for approval of a settlement because a "settlement is by nature a compromise between the maximum possible recovery and the inherent risks of litigation." *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 258 (D. Del. 2002). Courts routinely approve settlements under the above reasoning where the recovery is far less than 100%. *See, e.g. Gordon v. Dadante*, 2008 WL 1805787, at *14 (N.D. Ohio 2008) (approving settlement with 100% recovery and collecting cases were settlement with far less recovery was approved) (citing *In re Cendant Corp. Litig.,* 264 F.3d 201, 241 (3d Cir.2001) (finding no abuse of discretion in a district court's approval of a settlement where, inter alia, "the total settlement amount of nearly $3.2 billion represents a 36–37% recovery rate by the plaintiff Class") (citing *In re Prudential Sec., Inc., L.P. Litig.,* MDL No. 1005, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages); *In re Crazy Eddie Sec. Litig.,* 824 F.Supp. 320 (E.D.N.Y. 1993) (settlement of between 6% and 10% of damages); *In re Suprema Specialties, Inc. Sec. Litig.,* No. 02–168, slip op., 2008 WL 906254 at *6–*7 (D.N.J. Mar. 31, 2008) (approving a settlement that amounted to nearly 22% of plaintiffs' expert's damages estimate); ; *In re Datatec Sys., Inc. Sec. Litig.,* No. 04–CV525, slip op., 2007 WL 4225828, at *4 (10.87% of the possible damages was within the range of settlements approved in other securities cases).

Under this standard, the Settlement is nothing short of extraordinary. It achieves every significant request for injunctive relief that was sought in the Action and a 100% distribution of the monies that the Action sought to distribute. Plaintiffs sought to force the Fund to, and the Settlement requires the Fund to: (1) obtain a marketing consultant to assist the Fund in conducting a multi-media campaign designed to reach as many Non-Featured Performers as possible to make known to them the existence and availability of the Royalties and the procedures for them to obtain

payment of the Royalties owed to them by the Fund [SAC at ¶¶ 12, 25, 44-49, and 138]; (2) undertake additional and revamped procedures for identifying, locating and paying Non-Featured Performers [SAC at ¶¶ 12, 29-33, 64-72, and 139]; (3) engage in a variety of enhanced efforts to pay the Class Members (overwhelmingly Non-Featured Performers on the Unclaimed Royalty List) the tens of millions of dollars being held indefinitely by the Fund [SAC at ¶¶ 12, and 38-43]; (4) pay out on a pro rata basis any Unclaimed Royalties after the enhanced efforts had been exhausted (resulting in payment of 100% of the Unclaimed Royalties) [SAC at ¶¶ 138-139]; and (5) to rescind and replace Fund Guidelines that Plaintiffs contended served to discourage Non-Featured Performers from making claims to or identifying themselves to the Fund [SAC at ¶¶ 73-80 and 138].

During the course of and as a result of the Action prior to Settlement, the Fund made the necessary changes to the Guidelines. The Settlement provides for all of the other relief just described sought by Plaintiffs. In fact, the Settlement achieves one result not even pled for in the Second Amended Complaint—hiring a business consultant to redesign the Fund's business practices, processes, workflows, and internal controls to increase the efficiency by which the Fund identifies, locates, and pays NFPs. The only relief sought in the Second Amended Complaint and not achieved by the Settlement is an injunction forcing the Fund to seek aid from third party organizations in identifying and locating Non-Featured Performers (unnecessary in light of what the Settlement does require of the Fund) and pre-judgment interest on the Unclaimed Royalties. Simply put, the Settlement provides Plaintiffs and the Class virtually 100% recovery of the relief they sought and could have recovered via a litigation victory. As such, the Settlement not only easily falls within the range of reasonableness, it represents an exceptional result which should be approved.

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Parties request that the Court certify the Settlement Class for settlement purposes pursuant to Rules 23(a) and (b)(1)(A) of the Federal Rules of Civil Procedure. It is well settled that a court may certify a class for settlement purposes, provided that the court conducts an inquiry under Rules 23(a) and (b).[14] *Weinberger v. Kendrick*, 698 F.2d at 73; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). While a class generally must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619, 622 (1997)*.* As discussed below, Plaintiffs respectfully submit that the Settlement Class satisfies all of the prerequisites of Rule 23(a) and Rule 23(b)(1)(A).

### A.    Numerosity Is Satisfied

To qualify for certification, a class must be "so numerous that joinder of all members is impracticable." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *4 (quoting Fed. R. Civ. P. 23(a)(1)). "[A] plaintiff need not show that joinder is impossible. . . . Nor need the plaintiff know the exact number of class members." *Saddle Rock Partners Ltd. v. Hiatt*, No. 96-cv-9474-SHS, 2000 WL 1182793, at *2 (S.D.N.Y. Aug. 21, 2000) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Rather, while "[t]here is no strict numerical test for determining impracticability of joinder[,] . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing Newberg § 3.05, at 3-26). In this case there are 59,023 Class Members

---

[14] Newberg, §§ 11.27, *et. seq*. (4th ed. 2002) ("When the court has not yet entered a formal order … that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action .. to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd*, 907 F.2d 1295 (2d Cir. 1990).

owed sound recording Royalties under the Digital Millennium Copyright and Digital Performance of Sound Recordings Act and 2,275 currently-identified Class Members owed Audio Home Recording Act Royalties and thus there are a total of 61,298 currently-identified Class Members spread across the United States. The numerosity requirement is more than satisfied.

### B.    Commonality Is Satisfied

Rule 23(a)(2) is satisfied where "there are questions of law or fact common to the class." *Cutler v. Perales*, 128 F.R.D. 39 (S.D.N.Y. 1989). This does not mean that all class members must make identical claims and arguments, or that the circumstances of their purchases must be the same, only that common issues of fact or law affect all class members. *See Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000). "Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted).

Here, there are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Settlement Class Members. The Class Members are all non-featured performers and vocalists that are owed Royalties by the Fund. Other than the fact that some Class Members are background vocalists and some are session instrumentalists and that some are union and some are non-union, there are very few if any differences between the Class Members. And, what fiduciary duties Defendants owed and whether they breached those fiduciary duties by failing to take sufficient efforts to pay them is identical for all Class Members. Accordingly, there is sufficient commonality under Rule 23(a)(2).

### C.    Typicality Is Satisfied

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is readily met

where "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citation omitted). The requirements of commonality and typicality tend to merge. *Kindle v. Dejana,* 315 F.R.D. 7, 11 (E.D.N.Y. 2016).

In essence, "[t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quotation omitted). There is no requirement that the claims of all members of a purported class be identical. *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) ("When the same unlawful conduct was directed at both the named Plaintiffs and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.") (approving settlement and citing Newberg § 3.13 and *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 379 (S.D.N.Y. 1996).

Here, the claims of Plaintiffs are typical of the claims of the Class in that Plaintiffs, like all potential Settlement Class Members, are non-featured musicians and vocalists (both union and non-union) who are owed Royalties from the Fund and may be entitled to future Royalties as well, but who had not been paid because of what the Plaintiffs contend were insufficient efforts to properly identify, locate and pay Class Members. Thus, the factual and legal basis of Plaintiffs' allegations against Defendants are typical of those of all Class Members.

### D.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." The adequacy requirement "serves to uncover conflicts of interest between

the named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625 (citation omitted). The requirement is met if: (1) the named plaintiffs' interests are not antagonistic to the class' interests; and (2) the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *Penn. Ave. Funds v. Inyx Inc.*, No. 08 Civ. 6857(PKC), 2011 WL 2732544, at *5 (S.D.N.Y. July 5, 2011).

Plaintiffs' interests are identical to those of the other Class Members, so no conflict exists. Further, Plaintiffs have done everything they needed to do to successfully pursue this Action, including hiring very capable and experienced counsel, making them adequate representatives who have so far and will through the conclusion of the Action fairly protect the interests of the Class. Moreover, Class Counsel have decades of experience and great success in the music industry, music law and the prosecution of class actions, and they have more than adequately represented Class so far and will continue to do so. (Zukoski Decl. ¶¶ 15-19 and Exhibit 2; Mandel Decl. ¶¶ 4-6 and Exhibit 1.) The record in this case demonstrates that Plaintiffs and Plaintiff's counsel have adequately represented the Settlement Class, and the Court should so find.

In granting the Motion to Approve Notice, the Court found it likely that it would approve Plaintiffs as adequate Class Representatives and it appointed them such for the purpose of providing notice to the Settlement Class. It did likewise as to Plaintiffs' counsel acting as Class Counsel. In conjunction with certifying the Settlement Class, the Court should finally appoint Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel.

### E.    The Class Satisfies Rule 23(b)(1)(A)

In addition to the four requirements of Rule 23(a), a class also must satisfy one of the three requirements of Rule 23(b). This Action satisfies Rule 23(b)(1)(A) because varying or inconsistent adjudications would establish incompatible standards of conduct for the Fund with which it would

be impossible for the Fund to comply. "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax) or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Prods. v. Windsor,* 521 U.S. 591, 614 (1997).

For example, and very analogous to this Action, numerous courts in actions against the trustees of ERISA plans have certified classes under Rule 23(b)(1)(A) because of the requirement for consistent treatment of plan members. *See, e.g.*, *Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*, 270 F.R.D. 488, 496 (N.D. Cal. 2010) (holding that class could be certified in ERISA action for benefits under Rule 23(b)(1)(A) because there was a risk that individual litigation would result in different conclusions); *Alday v. Raytheon Co*., 619 F. Supp. 2d 726, 736 (D. Ariz.2008) (certifying class under Rule 23(b)(1)(A) in ERISA action, noting that "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner" and that Rule 23(b)(1)(A) "comes into play when a party is obligated by law to treat the members of a class in like manner); *In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. 265, 275–76 (S.D.N.Y. 2007) (certifying class under Rule 23(b)(1)(A) where failure to certify could result in incompatible standards of conduct for the administrator of the plan).

Such is the case here where Defendants are charged with collecting and distributing Royalties to a cohesive class of non-featured performers on covered recordings. The statutory provisions at issue in this action expressly provide that the Royalties are to be paid regardless of "whether or not members of the American Federation of Musicians" and regardless of "whether or not members of the American Federation of Television and Radio Artists." 17 U.S.C. §

114(g)(2)(B) & (C)).[15] Further, under New York trust law, applicable to the Fund, Defendants have the duty to treat all Non-Featured Performers impartially, which means treat them equally, since the trust agreement creating the Fund does not provide otherwise. *See Wells v. Hurlburt Road Co.*, 43 N.Y.S. 637, 638 (N.Y. Sup. Ct. App. Div. 2016).

Indeed, Defendants contended in their Motion to Dismiss that they are required by the Copyright Royalty Board, established and governed by the Copyright Act, a federal statute, to uniformly distribute Royalties to NFPs according to a predetermined formula. (ECF 52, p. 4.) Further, the sheer number of Class Members, more than 61,000, dictates the Fund utilize a standardized process in identifying and paying them. The injunctive relief crafted in this Settlement provides for such a process now and in the future.

If the Class is not certified, individual actions could result in the Fund being ordered to undertake significantly varying and incompatible activities to identify and pay Class Members and other Non-Featured Performers. As set forth above, courts have certified cases regulating the conduct of trustees in numerous other cases under Rule 23(b)(1)(A) for exactly this reason.

## VI.    THE FORM AND METHOD OF CLASS NOTICE WAS APPROPRIATE AND NO OBJECTIONS WERE RECEIVED

Because the Parties sought the certification of a mandatory non-opt out class under Rule 23(b)(1)(A), notice was not mandatory. *Walsh v. Great Atl. & Pac. Tea Co.,* 726 F.2d 956, 962 (3d Cir. 1983) ("in Rule 23(b)(1) and (b)(2) class actions, Rule 23(d) [now Rule 23(c)(2)(A)] provides that pre-settlement notice is entirely discretionary with the trial court"); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (U.S. 2011) ("The Rule provides

---

[15] Similarly, the AHRA provides that the Royalties shall be paid regardless of "and "whether or not members of the American Federation of Musicians or any successor entity" and regardless of "whether or not members of the American Federation of Television and Radio Artists or any successor entity". 17 U.S.C. § 1006(b)(1)

no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action"); *see also*, Newberg on Class Actions § 8:3 (5th ed.). Nonetheless, the Parties asked the Court to order that notice be given because the number of Class Members was so large and because the giving of notice would advance one of the primary objectives of the Settlement, making Class Members aware that they may be owed Royalties and motivating them to identify themselves to the Fund so they can be paid.

### A.      The Scope of the Notice Program Satisfied Due Process and Rule 23

When measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, a court should look to the notice program's reasonableness. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007). "Notice need not be perfect, but … only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*. (citation omitted).

Here, the administrator, KCC Class Action Services, LLC, was selected after a lengthy process that involved numerous phone interviews and extensive email correspondence with three potential class action claim administrators who each submitted multiple bids. Before and after receiving the bids, Class Counsel and Defense Counsel conducted multiple discussions with each of the bidders aimed at assessing their suggested methods, mediums, and depth of notice for the purpose of ultimately being able to select a bidder with the optimal campaign in terms of effectiveness, as well as cost since the administrator would be paid out of the Unclaimed Royalties. The Parties ultimately engaged KCC Class Action Services LLC based on Class Counsel, Defense Counsel, and the Fund's assessment of the various proposals based on effectiveness and cost.

As set forth in the Declaration of Jeanne Chernila of KCC Class Action Services, LLC ("KCC") filed herewith, KCC caused the press release to be distributed via PR Newswire on May 16, 2020. The press release was issued nationally, as well as to journalists requesting to receive information regarding music. KCC caused the Summary Notice to be published in the June 2020 edition of Music Connection, the July 2020 edition of Bass Player, and the August 2020 editions of Modern Drummer, Guitar Player and Guitar World. In addition, KCC purchased over 31,985,000 impressions that were distributed via the Google Display Network, Facebook, Instagram, Twitter and YouTube, as well as Billboard.com, MusicRadar.com, SoundonSound.com and KeyBoardMag.com. The impressions appeared on both mobile and desktop devices from (1) May 16, 2020 through July 15, 2020, (2) June 1, 2020 through June 30, 2020, and (3) August 15, 2020 through September 14, 2020. A total of 33,446,179 impressions were delivered. A Native Article, three e-newsletters, and digital impressions appeared on/via DigitalMusicNews.com on June 1, 2020, June 10 and June 17, 2020, and June 1, 2020 through June 30, 2020 respectively. A one-week homepage exclusive notice placement, one-week rumor mill exclusive notice placement, e-blast and digital notice placements appeared on/via HITSDailyDouble.com the week of May 17, 2020, the week of May 31, 2020, the week of June 7, 2020, and June 7, 2020 through June 20, 2020 respectively. *International Musician* and *SAG-AFTRA* would not agree to run the Notice. Therefore, the budget for these publications was reallocated to the Retargeting and Remarketing effort.

On or about May 12, 2020, KCC established a website [www.SessionArtistRoyaltySettlement.com] dedicated to this matter to provide information to the Class Members and to answer frequently asked questions. The website URL was set forth in the various Publication Notices and internet banner ads. Visitors of the website could download copies

of the Notice, Class Members can download a Performer Identification Form to submit to the Fund to receive payment, and other case-related documents. As of October 8, 2020, the website had received 16,541 visits. KCC established a toll-free telephone number (844-799-1587) for potential Class Members to call and obtain information about the Settlement or request a Notice Packet. The telephone hotline became operational on May 11, 2020, and was accessible 24 hours a day, 7 days a week. A dedicated email mailbox (admin@SessionArtistRoyaltySettlement.com) was set up and activated on May 11, 2020, to provide direct communication between Class Members and the Settlement Administrator.

As of the date of this Motion, neither KCC nor Class Counsel have received any objections to the Settlement.

## VII.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an order finally approving the Settlement, including the Class Representative service awards, and certifying the Class pursuant to Fed. R. Civ. P. 23(b)(1)(A), including finally appointing Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel.

Respectfully submitted,



Eric Zukoski, Texas Bar No. 24010509
ezukoski@qslwm.com
James H. Birch, Texas Bar No. 00797991
jbirch@qslwm.com

QUILLING, SELANDER, LOWNDS,
WINSLETT AND MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100
(214) 871-2111 (facsimile)

-and-

Roger L. Mandel, Texas Bar No. 12891750
rmandel@jeevesmandellawgroup.com

JEEVES MANDEL LAW GROUP, P.C.
12222 Merit Drive, Suite 1200
Dallas, Texas 75251
Telephone: (214) 253-8300
Telecopier: (727) 822-1499

-and-

Kieran M. Corcoran, KC4935
kieran.corcoran@stinson.com

STINSON LEONARD STREET LLP
1325 Avenue of the Americas, 27th Floor
New York, NY 10019
(t) (212) 763-8491
(f) (212) 763-8304

ATTORNEYS FOR PLAINTIFFS
JON   BLONDELL,   PAUL   HARRINGTON,
TIMOTHY JOHNSON, STEPHANIE LOWE FKA
STEPHANIE MARIE, CHASTITY MARIE, AND
CLAYTON PRITCHARD, INDIVIDUALLY AND
ON   BEHALF   OF   A   CLASS   OF   SIMILARLY
SITUATED PERSONS