UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
JON BLONDELL, *et al.*,

                Plaintiffs,              REPORT AND
                                                 RECOMMENDATION
   -against-                                   17 CV 372 (RRM)(RML)

BRUCE BOUTON, *et al.*,

                Defendants.
------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated November 3, 2020, the Honorable Roslynn R. Mauskopf, United States District Judge, referred plaintiffs' motion for attorney's fees and costs to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted and that Class Counsel be awarded $2,794,328.61 in attorney's fees and costs.

## BACKGROUND

        Plaintiffs Jon Blondell, Paul Harrington, Timothy Johnson, Stephanie Lowe f/k/a Stephanie Marie, Chastity Marie, and Clayton Pritchard ("plaintiffs") commenced this action in January 2017, seeking payment of unclaimed royalties owed to a class of session musicians and background vocalists pursuant to the Digital Millennium Copyright Act, the Digital Performance Right in Sound Recordings Act, and the Audio Home Recording Act, all contained within the U.S. Copyright Act, 17 U.S.C. § 114(g). (See generally Class Action Complaint, filed Jan. 17, 2017, Dkt. No. 1; see also Amended Class Action Complaint, filed Apr. 24, 2019, Dkt. No. 23; Second Amended Class Action Complaint, dated Feb. 7, 2018 ("Second Am. Compl."), Dkt. No. 48.) Defendants Bruce Bouton, Duncan Crabtree-Ireland, Augustino Gagliardi, Raymond M. Hair, Jr., Jon Joyce, and Stefanie Taub are current or former trustees of the AFM & SAG-AFTRA Intellectual Property Rights Distribution Fund (the "AFM & SAG-AFTRA Fund"), a

New York trust that was formed by two unions—the American Federation of Musicians of the United States and Canada, AFL-CIO-CLC and the Screen Actors Guild-American Federation of Television and Radio Artists—to collect and pay royalties to both union and non-union members. (Second Am. Compl. ¶¶ 2-7, 11.) Plaintiffs alleged that defendants violated their fiduciary duty by failing to properly identify, locate, and pay the session musicians and background vocalists entitled to the royalties, and to the extent they did pay royalties, defendants allegedly did so with an improper preference for union members over non-union members. (See id. ¶¶ 11-12.)

After the court denied defendants' motion to dismiss (see Memorandum and Order, dated Mar. 29, 2019, Dkt. No. 65), the parties engaged in discovery and ultimately reached a settlement. The parties consented to Magistrate Judge jurisdiction for the purpose of ruling on plaintiffs' unopposed motions to, inter alia, provisionally certify the proposed class, appoint class counsel, appoint plaintiffs as class representatives, approve the proposed notice plan, appoint KCC Class Action Services, LLC to serve as the settlement administrator, and approve the settlement and enter a final judgment. (See Consent to Magistrate Judge Disposition, dated Apr. 14, 2020, Dkt. No. 80; Plaintiffs' Motion for Settlement, filed Mar. 20, 2020, Dkt. No. 76.) I held a hearing for the approval of the class action settlement on October 22, 2020, at which no class members objected to the settlement, and on October 30, 2020, I approved the settlement. (See Order, dated Oct. 30, 2020.) The parties' consent did not include the instant motion for attorney's fees and costs, which Judge Mauskopf referred to me (see Order, dated Nov. 3, 2020), and which defendants oppose (see Defendants' Memorandum of

Law in Opposition to Class Counsel's Motion for Approval of Attorney's Fee Award and Reimbursement of Costs, dated Oct. 21, 2020 ("Defs.' Mem."), Dkt. No. 89).[1]

The settlement provides for, among other relief, payment of almost $46 million to 61,298 session musicians and background vocalists for years 2011 to 2016, plus an estimated $36 million for years 2017 to 2019. (See Declaration of Eric Zukoski, Esq., dated Mar. 20, 2020 ("Zukoski Decl."), Dkt. No.76-1, ¶¶ 12-13; Class Action Settlement and Release ("Settlement"), attached to the Zukoski Decl. as Ex. 1.) The settlement also provides that plaintiffs' attorney's fees and expenses "shall be determined by the Court pursuant to Federal Rules of Civil Procedure 54(d)(2) and 23(h) and Local Rule 23.1 and any applicable Court policies and procedures." (Settlement § 4.03.) Class Counsel request that the court approve a fee award of $11,003,711, which is approximately twenty-four percent of the $46 million settlement amount,[2] and reimbursement of expenses in the amount of $80,254.86. (Memorandum in Support of Class Counsel's Motion for Approval of Attorneys' Fee Award and Reimbursement of Costs, filed Sept. 23, 2020 ("Pls.' Mem."), Dkt. No. 85-1, at 1.) Plaintiffs were represented by three law firms over the course of this litigation: Quilling, Selander, Lownds, Winslett & Moser, P.C.; Lackey Hershman, LLP n/k/a Leonard Street Stinson, LLP; and Jeeves Mandel Law Group, PC, all based in Texas.

---

[1] Plaintiffs maintain that defendants lack standing to oppose their application for attorney's fees and costs. (See Memorandum in Support of Class Counsel's Motion for Approval of Attorneys' Fee Award and Reimbursement of Costs, filed Sept. 23, 2020, Dkt, No. 85-1, at 3-4.) However, as plaintiffs allege, defendants owe a fiduciary duty to ensure that class members receive the royalties they are owed. Moreover, Rule 23 independently obligates the court to "act[] as the fiduciary of absent class members whose recovery could be diminished by an excessive aggregate fee." DeValerio v. Olinski, 673 F. App'x 87, 92 (2d Cir. 2016). I have therefore considered defendants' arguments opposing Class Counsel's motion.

[2] If the estimated distribution required by Section 4.03 of the Settlement Agreement for Source Years 2017 through 2019 is included, the fee request is 13.4 percent of the recovery. (Declaration of Brian T. Fitzpatrick, dated Sept. 3, 2020, Dkt. No. 85-2, ¶ 15.)

**DISCUSSION**

A.  <u>Attorney's Fees</u>

Under Federal Rule 23, when counsel obtain a settlement for a class, courts "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 478 (1980); <u>see also</u> <u>Victor v. Argent Classic Convertible Arbitrage Fund L.P.</u>, 623 F.3d 82, 86 (2d Cir. 2010) ("[T]he common fund doctrine permits attorneys whose work created a common fund for the benefit of a group of plaintiffs to receive reasonable attorney's fees from the fund."). Likewise, "reasonable expenses of litigation" may be recovered from a common fund. <u>See</u> <u>Mills v. Elec. Auto-Lite Co.</u>, 396 U.S. 375, 391-92 (1970).

At the outset, defendants argue that the settlement did not "create" a common fund, since the AFM & SAG-AFTRA Fund had already been holding the unclaimed royalties at issue in trust for years pursuant to the Copyright Act, which requires that royalties due to non-featured performers be held in an escrow account managed by an independent administrator. (<u>See</u> Defs.' Mem. at 9 (citing 17 U.S.C. § 114(g)(2).) Regardless, even assuming this can be considered a "common fund" settlement, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases." <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43, 50 (2d Cir. 2000). Whichever method is chosen, for purposes of evaluating a request for attorney's fees, courts in the Second Circuit should be guided by the following non-exclusive factors: (1) the time and labor expended by

4

counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  Id.  I will address each of the Goldberger factors in turn:

    1.  Time and Labor Expended by Counsel

The benefits achieved by the settlement were the result of the work of three law firms over the course of three years of litigation carried out by at least fourteen attorneys, nine paralegals, numerous administrative personnel, a music and technology expert, and a marketing expert.  (See Declaration of Eric Zukoski, Esq., dated Sept. 22, 2020 ("Second Zukoski Decl."), Dkt. No. 85-3, ¶¶ 3-4, 8-9, 16-19 & Ex. 1.)  Class Counsel conducted pre-litigation research, worked with plaintiffs on drafting the complaint and amended complaints, conducted factual case development, responded to defendants' motion to dismiss, reviewed discovery, consulted with experts, and negotiated the settlement.  Class Counsel were effective in securing this result for the class. This factor thus supports a fee award.

    2.  Magnitude and Complexities of the Litigation

Class actions for royalties brought under the Digital Millennium Copyright Act, the Digital Performance Right in Sound Recordings Act, and the Audio Home Recording Act are rare and require a willingness to risk significant resources in time and money, given the uncertainty of recovery.  At the time of filing, there were no reported decisions relating to the statutory provisions at issue in this action, or any opinions discussing the standard of care for trustees responsible for identifying, locating, and paying unclaimed royalties to unknown beneficiaries. (See Second Zukoski Decl. ¶ 3.)  In general, "class actions 'have a well deserved reputation as being most complex.'"  In re Nasdaq Market–Makers Antitrust Litig., 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citations omitted).  Class Counsel thus had to be

knowledgeable about this area of law, aware of the numerous merits and procedural pitfalls, willing to risk dismissal, and prepared to pursue many years of litigation. On the other hand, in contrast to a complex securities or accounting fraud case, this lawsuit did not require Class Counsel to review many thousands of pages of documents, depose dozens of witnesses, or engage in extensive motion practice. Rather, the parties briefed one dispositive motion, produced fewer than 2,500 documents, and took two depositions before engaging in settlement discussions. (See Defs.' Mem. at 18-19.) The complexity of the litigation therefore supports a more moderate award of attorney's fees.

### 3. Risk of the Litigation

The risk of zero recovery exists in every case, and was especially present here, because many of the issues were novel and untested. This case was hotly contested, and indeed, defendants continue to argue that this case lacks merit, as they already had a fiduciary duty to distribute the unclaimed royalties, which they claim they did not breach. (See Defs.' Mem. at 19-20.) Nevertheless, Class Counsel persisted in representing the class on a contingency basis despite the uncertainty, and have invested nearly 3,000 hours of work and advanced more than $80,000 in costs. Had this case moved towards trial, additional motion practice would surely have prolonged this case and required the commitment of many more attorney hours and overhead expenses. Thus, the contingency risk in this case supports an award of attorney's fees.

### 4. Quality of Representation

As the result in this case indicates, Class Counsel were able to leverage their expertise and experience to achieve a meaningful benefit for the class. See Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) ("'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree

of success obtained by the plaintiff.'") (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)). The settlement in this action obtains virtually all of the injunctive relief plaintiffs sought[3] and provides the monetary relief to which plaintiffs are entitled. (See Second Zukoski Decl., Ex. 2.) The quality of representation was high and supports an award of fees.

       5. Requested Fee in Relation to the Settlement

Class Counsel's request for approximately twenty-four percent of the settlement fund is consistent with the percentage awarded in other class actions. See, e.g., Bilewicz v. FMR Co., No. 13 CV 10636, 2014 WL 8332137, at *6 (D. Mass. Oct. 16, 2014) (approving a one-third fee from a $12 million recovery); In re Marsh ERISA Litig., 265 F.R.D. 128, 147-50 (S.D.N.Y. 2010) (awarding 33.3 percent of the common fund in ERISA action); see also Grice v. Pepsi Beverages Co., 363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (explaining that "[r]ecent studies of attorney's fees awards in common fund settlements . . . have found that the median percentage for such awards ranged from 26.4% to 30%.") (citing Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 839 (2010); Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements: 1993–2008, 7 J. Empirical Legal Stud. 248, 265 (2010); William B. Rubenstein, 5 Newberg on Class Actions § 15:78 (5th ed. 2018)); In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."); Stefaniak v. HSBC Bank, USA, NA, No. 05 CV 7205, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (finding that fee

---

[3] The Settlement Agreement requires defendants to hire business and marketing consultants and develop and implement plans that will improve the AFM & SAG-AFTRA Fund's operations and lead to more and greater royalty pay-outs to session musicians and background vocalists. (See Settlement.)

7

awards of thirty-three percent of the settlement fund are typical of class action settlements in the Second Circuit) (collecting cases).

Nevertheless, as defendants point out, this is not a typical common fund settlement, such as those usually reached in securities, ERISA, or antitrust lawsuits in which the settlement results in the creation of a new, defined pool of money. (See Defs.' Mem. at 13 n.6.) Instead, the settlement in this case provided additional access to monies that had been earned by the class members and were already being held in trust for the potential claimants. In light of that distinction, as explained in more detail below, I find that this factor underscores why this settlement is distinguishable from most common fund settlements and therefore counsels a more moderate award of attorney's fees.

### 6. Public Policy Considerations

Courts must scrutinize the unique circumstances of each case with "a jealous regard to the rights of those who are interested in the fund," while also providing incentives to bring these cases in the future. Goldberger, 209 F.3d at 53. Class Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring cases that serve the public interest. A fee that is too low would create poor incentives to bring class actions and would discourage lawyers from seeking the types of relief included in this settlement, which will benefit 61,298 session musicians and background vocalists.[4] This element thus weighs in favor of awarding attorney's fees, although it does not justify a windfall. See Dial Corp. v. News

---

[4] While defendants argue that "this litigation did not result in any material benefit to the class," since the royalties were already being held in trust for the artists who earned them (see Defs.' Mem. at 2), the settlement requires them to undertake additional steps to identify and locate non-featured performers who are due royalties. In addition, it authorizes the AFM & SAG-AFTRA Fund to distribute the remaining unclaimed royalties on a *pro rata* basis once it has exhausted its efforts to locate class members. (See Settlement § 4.01.) Thus, more performers will now receive those royalties.

Corp., 317 F.R.D 426, 436 (S.D.N.Y. 2016) ("Public policy encourages the award of reasonable attorneys' fees, but courts must also guard against providing a monetary windfall to class counsel to the detriment of the plaintiff class.") (citation and internal quotation marks omitted).

### B. Lodestar versus Percentage of the Fund Method

"The reasonableness of an attorney's requested fees is a matter within the district court's discretion." Bond v. Welpak Corp., No. 15 CV 2403, 2017 WL 4325819, at *4 (E.D.N.Y. Sept. 26, 2017). In exercising that discretion in the context of a class action settlement, the court "may award attorneys' fees . . . under either the 'lodestar' method or the 'percentage of the fund' method." McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)).

The Second Circuit had held "that the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" Millea v. Metro–North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). Indeed, the percentage-of-the-fund method, which Class Counsel advocate using here, "holds the potential to result in attorneys' fees many times greater than those that would have been earned under the lodestar of hourly rate multiplied by hours worked." McDaniel, 595 F.3d at 418-19. In this case, I agree with defendants that the value of the unclaimed royalties is not an appropriate benchmark for the value of the settlement, and thus the percentage-of-the-fund method of computing fees would not be fitting, as the AFM & SAG-AFTRA Fund has continuously held those royalties in trust since long before this lawsuit was filed. (See Defs.' Mem. at 21-22.) A reasonable fee is "the rate a paying client would be willing to pay," Arbor Hill, 522 F.3d at 190, and I do not believe that a reasonable class of session musicians and background vocalists would willingly pay Class

9

Counsel over eleven million dollars out of the royalties being held in trust for them.[5]  I also do not agree that attorney's fees of over eleven million dollars—more than six times the lodestar amount—are necessary to incentivize lawyers to bring class actions such as this.  On the other hand, Class Counsel should be rewarded for taking the risks involved in pursuing this case and negotiating a positive settlement for the class.  Thus, I respectfully recommend applying the lodestar method to calculate reasonable attorney's fees.

To assist the court in evaluating their request for attorney's fees, Class Counsel has submitted *in camera* an attorney's declaration and a lodestar summary.  (See Declaration of Roger L. Mandel, Esq., dated Sept. 22, 2020 ("Mandel Decl."), Dkt. No. 65-4; Timekeeper Lodestar Summary, attached to the Second Zukoski Decl. as Ex. 1.)  According to the summary, Class Counsel has worked over 2,938 hours on this case, and has reduced their lodestar amount by ten percent to reflect the exercise of billing judgment.  (Timekeeper Lodestar Summary; Second Zukoski Decl. ¶ 16.)  Their resulting base lodestar is $1,809,382.50.  (Second Zukoski Decl. ¶ 16.)  The summary shows that most of the work done in this case was performed by two attorneys, Eric Zukowski and Roger L. Mandel, both of whom have decades of legal experience. (See Timekeeper Lodestar Summary; Eric Zukowski Resume, attached to the Second Zukowski Decl. as Ex. 3; Roger Mandel Resume, attached to the Mandel Decl. as Ex. 1.)

The hourly rates Class Counsel charges—ranging from $125 for paralegals to $600 for Mr. Zukowski and $850 for Mr. Mandel—are at the high end of the range (and in many cases are above the range) of those courts in the Eastern District of New York typically award.  Yet, "courts have approved lodestars in class action settlements based on billable rates of

---

[5] I am aware that no class members objected to Class Counsel's fee request, but I do not view the absence of objections as approval or support for the request. Class Counsel are to be commended for obtaining this result for the class, but the amount discussed below will be generous compensation for their efforts.

between $405 and $790 for partners and between $270 and $500 for associates." Tanski v. AvalonBay Communities, Inc., No. 15 CV 6260, 2020 WL 2733989, at *2 (E.D.N.Y. May 26, 2020) (citations omitted)). See also New York Ass'n for Retarded Child. v. Cuomo, No. 72 CV 356, 2019 WL 3288898, at *3 (E.D.N.Y. July 22, 2019) (surveying cases and concluding that "fees in complex cases in the Eastern District have ranged between $400-$600 per hour for partners [and] $200-$400 per hour for associates"); cf. Declaration of Brian T. Fitzpatrick, dated Sept. 3, 2020, Dkt. No. 85-2, ¶ 33, Ex. 3 (citing 2018 nationwide survey of large law firm billing rates showing that rates in major metropolitan areas including New York City averaged $994 for partners). Therefore, I find the requested hourly rates reasonable considering the particular circumstances of this case.[6]

As for the number of hours expended,[7] I note that in addition to the work described above, Class Counsel prepared to take the depositions of all defendants and multiple AFM & SAG-AFTRA Fund employees, and they spent many hours working with experts in preparation for a trial that never came to pass. (See Second Zukoski Decl. ¶¶ 8-9.) Although Class Counsel has not submitted contemporaneous attorney time records, as is normally required for fee applications in this Circuit (see Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam)), the court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Gierlinger v. Gleason, 160 F.3d 858, 887 (2d Cir. 1998) (quoting DiFilippo v. Morizio, 759 F.2d 231, 235–36 (2d Cir. 1985)); see also Gleason v. Scoppetta, No. 12 CV 4123, 2015 WL 13741857, at *7

---

[6] This should not be interpreted as a finding that Class Counsel's hourly rates are within the range generally considered reasonable in the Eastern District of New York. This recommendation is specific to the class action settlement at issue here.

[7] Of the hours expended, over 450 were worked by law clerks and paralegals. (See Timekeeper Lodestar Summary.)

11

(E.D.N.Y. Dec. 30, 2015) (explaining that "[t]he goal is 'to do rough justice, not to achieve auditing perfection.'") (quoting Fox v. Vice, 563 U.S. 826, 837 (2011)); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 4 (2d Cir. 2013) ("Trial courts evaluating fee requests need not, and indeed should not, become green-eyeshade accountants. . . . [D]istrict courts may take into account their overall sense of a suit in estimating compensable attorney time, which determinations are owed substantial deference"). In addition, "it is permissible to provide a summary of time records . . . in lieu of actual records" so long as "a person with knowledge . . . provide[s] the court with competent evidence that the summary is in fact based on time records that were contemporaneously made by each of the attorneys." Anzurez v. La Unica Caridad Inc., No. 20 CV 3828, 2021 WL 2909521, at *7 (S.D.N.Y. July 12, 2021), report and recommendation adopted, 2021 WL 3173734 (S.D.N.Y. July 27, 2021) (citation omitted); see also Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., 291 F. Supp. 3d 554, 562-63 (S.D.N.Y. 2018). Class Counsel has complied with that condition. (See Second Zukoski Decl. ¶ 16.) Finally, as explained, the "results obtained" are the most important consideration in determining how many hours were reasonably expended. See generally Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (the "critical factor is the degree of success obtained"). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435.

"While 'there is a strong presumption that the lodestar figure is reasonable,' it may be adjusted by a multiplier when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Lizondro-Garcia v. Kefi LLC, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (quoting Perdue v. Kenny A ex rel. Winn, 559 U.S. 542, 554 (2010)). Here, I note that in addition to the distribution of tens of millions of dollars in royalties owed to the class, the settlement provides for the overhaul of what plaintiffs describe as

the inadequate infrastructure and framework of the AFM & SAG-AFTRA Fund, which resulted in the long-term failure to distribute these royalties. Without this litigation and the resulting settlement, which fundamentally change the AFM & SAG-AFTRA Fund's operations now and going forward, it is highly likely that past and future royalties owed to the class would have remained undistributed. Accordingly, I respectfully recommend that a multiplier of 1.5 be applied. In sum, in light of the results obtained and all of the factors analyzed above, I respectfully recommend that Class Counsel be awarded $2,714,073.75 in attorney's fees.

### C. Costs

Reimbursement of the litigation expenses that Class Counsel advanced in prosecuting this case is also warranted. FED. R. CIV. P. 23(h). Counsel may recover those expenses that would normally be charged to a fee-paying client. In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 246 F.R.D. 156, 178 (S.D.N.Y. 2007) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses.") Counsel brought this case without any guarantee of reimbursement or recovery, so they had an incentive to keep costs to a reasonable level, and they did so.

I have reviewed Class Counsel's description of these costs and expenses, broken down by category. (Second Zukowski Decl., Ex. 4.) The costs and expenses are of the types that are routinely reimbursed by paying clients, "such as experts' fees, travel, mediation fees, and photocopying costs." Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm., 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020); see also Grice, 363 F. Supp. 3d at 411 (awarding $74,507.79 in costs); In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding expenses of $263,945.54 incurred in representing class); In re Currency Conversion Fee Antitrust Litig., 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (granting counsel's request for

13

reimbursement of $3,708,072 in expenses). Counsel's request for reimbursement of $80,254.86 in costs and expenses is reasonable, and I respectfully recommend that it be granted.

## CONCLUSION

After consideration of Class Counsel's motion, I respectfully recommend that the motion be granted and that Class Counsel be awarded $2,714,073.75 in attorney's fees and $80,254.86 in costs, for a total of $2,794,328.61. Any objections to this Report and Recommendation must be filed electronically or with the Clerk of the Court, with courtesy copies to Judge Mauskopf and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,

  /s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       August 30, 2021